C. W. ELY, JR., V. THE STATE.

No. 20712. Delivered May 29, 1940.
Rehearing Denied June 26, 1940.

The opinion states the case.

*Roy A. Downey,* of Royalty, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder; the punishment assessed is death.

The record shows that on or about the 15th day of May, the appellant (a boy of eighteen years), Orvil Chance, Glenn Osborne and Z. L. Huggins, came from Jal, New Mexico, to Monahans, Texas. Upon their arrival, they engaged a cabin at a tourist camp. On the evening of the next day they went to a restaurant and ate chili. Osborne and appellant returned to the cabin about 10:00 P. M. and retired for the night. During the night, Osborne, who was sleeping with appellant, became sick. Appellant was awakened by his vomiting and after a short time the two boys became hungry and decided to get something to eat. They started to a restaurant, but had gone only a block or two from their cabin when the deceased, a

deputy marshal, stopped and questioned them. They told him their names, where they were from, etc. He then asked them to get into his automobile and he drove them to the home of the city marshal. The city marshal questioned the boys upon the same subject and they gave him about the same answers that they had given to the deputy. He then instructed the deputy marshall to carry them to jail and confine them there for the night. When they arrived at the jail, the deceased made them go inside. There appellant drew a pistol and shot him. It appears from the record that the deceased did not know the appellant had a pistol. Both of the boys ran outside after the shooting. Appellant alone entered the deceased's car and attempted to escape but was arrested a short time later and placed in jail. He was indicted on the following day and tried eleven days later, which resulted in the assessment of the penalty above stated.

Appellant testified in his own behalf and claimed that his pistol was accidentally discharged, and that this resulted in the death of the deceased. This theory of the case, however, was not submitted to the jury, and no objection was interposed by appellant for the omission. Therefore, in fairness to the court and to the defendant, we feel impelled to dispose of the case upon the theory upon which it was tried. Any other course would be out of harmony with the well-established rules of this court. Consequently, the main question which we need to discuss at length is whether the evidence shows a killing with malice aforethought. The uncontradicted evidence shows that appellant was illegally arrested by the deceased and the trial court so instructed the jury. This being true, appellant had the legal right to use such force as appeared to him at the time to be reasonably necessary to attain that end. Of course, if he at once used greater force than was necessary under the circumstances and in doing so he killed the deceased he would, in the absence of any showing of malice or former ill-will, be guilty of murder without malice which formerly constituted manslaughter prior to its repeal. It is true that whether or not malice existed is ordinarily a question of fact to be determined by the jury. However, where there is no evidence of express malice, it must be inferred from an illegal, wanton or reckless act. In this case the undisputed evidence shows that the deceased and appellant were not acquainted. They had never met prior to the night in question, and there was no evidence of any ill feeling on the part of appellant toward the deceased. Consequently, if any ill-will arose, then when

did it arise and what produced it? Was appellant provoked to act? If so, was the provocation such as would commonly produce in a person of ordinary temper that degree of anger, rage or sudden resentment arising from an adequate cause as would render his mind incapable of cool reflection? If so, then the homicide is murder without malice. If, however, the pistol was accidentally discharged, it would not be murder, but at most negligent homicide. But the case was not tried or submitted to the jury on such a theory. Hence, we need not any longer dwell on that aspect of the case. It may be contended, and we concede that it is ordinarily true, that whether a homicide is committed with or without malice is a question of fact to be determined by the jury from the previous relationship existing between the parties, as well as the surrounding facts and circumstances at the time of the homicide. See Art. 1257a, P. C. No previous relationship existed as appears from the record. Consequently, such is not a basis for a conclusion of malice. This relegates us to the surrounding facts and circumstances at the time and place of the killing, and if they are undisputed so as to leave no room for the minds of reasonable men to differ, then it is no longer a question of fact but becomes one of law.

In the case of Parks v. State, 99 S. W. (2d) 943, the appellant was an officer. He and a soldier had gone to a beer tavern to get a drink. The deceased and a friend were in the tavern at the time. Appellant, the soldier and the friend of the deceased engaged in throwing dice for the drinks. Appellant won. The deceased accused appellant of cheating his friend and immediately knocked appellant down. Appellant, who was armed, made no effort to draw a pistol. He told the deceased that he had not cheated the friend. Deceased then offered to apologize and offered to shake hands. Appellant declined to shake hands, turned and started to leave. The deceased again knocked him down and when appellant arose, the deceased again threatened to strike him, whereupon appellant shot twice. The second shot proved to be fatal. In that case Judge Christian said: "Nothing in the record points to coolness or deliberation on the part of appellant when he fired the fatal shot. * * * All of the evidence shows that there was no premeditation, and so strongly indicates that appellant was not in a condition where his mind was capable of cool reflection as to lead us to the conclusion that a conviction for murder with malice was unwarranted."

This is virtually a restatement of the doctrine hereinabove

stated that when the facts are undisputed and are such as to leave no room for the minds of reasonable men to differ, then it is no longer a question of fact but one of law. Judge Hawkins, in an opinion on a motion for rehearing in the same case, said: "The punishment assessed * * * was eight years, therefore, the jury must have found that appellant was prompted by malice aforethought. Our purpose in the original opinion was simply to hold from all the facts and circumstances proven by the State the jury was unwarranted in finidng that the killing was upon malice aforethought. We did not intend to leave the impression that there must of necessity be evidence of premeditation or a previously formed design to kill. A killing might occur under circumstances where malice could be inferred."

Now, what facts or circumstances have we in the instant case which show malice or a previously formed design on the part of the appellant to kill the deceased? None. Appellant, without having violated any law, was illegally arrested, restrained of his liberty and was thrown into a jail by the deceased without any cause at the time that he fired the fatal shot. The Constitution provides that no citizen shall be deprived of his liberty without due process of the law. Appellant had a right under the law and the Constitution, to extricate himself from the illegal arrest and to use such force and such means as were available to him at the time as appeared to him to be necessary to attain that end. This being true, where is the showing of malice aforethought necessary to sustain a conviction of murder with malice and the assessment of the death penalty? No unusual cruel disposition on the part of the appellant, other than the mere killing, was shown. We conclude that the evidence did not show that the appellant killed deceased with malice aforethought.

By Bill of Exception No. 1, appellant complains of the action of the trial court in permitting the District Attorney, on cross-examination of appellant, to inquire of him if he did not make a statement to him (the District Attorney) to the effect that he pulled the safety off the gun when he saw the deceased and Osborn "over there." Appellant, through his counsel, objected thereto on the ground that such statement was not shown to have been made in a confession. (The State had theretofore introduced appellant's confession, but it did not contain any such statement.) To appellant's objection, the District Attorney replied, "We will see about that." Thereupon the court remarked: "If there is any other statement

made under the rules (other than the one which had already been admitted) it will be admitted." Appellant then insisted that the State be required to show that the rule with reference to taking confessions was complied with in this second statement. This request was overruled and then the District Attorney propounded to appellant the following questions and received the following replies, to-wit:

"Q. Have you seen me before? A. Yes, sir.
"Q. In Monahans the day that you were arrested? A. Yes, sir.
"Q. Did you make a written statement to me? A. Yes, sir."

Then the District Attorney proved that appellant made a written statement to him after he had been warned as provided by law. But instead of introducing said claimed SECOND confession, if any, he continued to propound the following questions to him:

"Q. Will you say whether you did or did not in that statement say you were pulling that gun off safety while he, deceased, was over there with Osborn? A. I won't say whether I did or didn't. If I did I don't know it."

At this juncture the District Attorney turned the witness back to appellant's counsel for re-direct examination. Whereupon appellant, through his counsel, requested the court to instruct the jury to disregard all evidence concerning the statement claimed to have been made because the claimed written statement had not been introduced. Whereupon the District Attorney remarked: "We have the statement in our possession and at the proper time we will offer it or not offer it."

Appellant insisted that the District Attorney be required to introduce it and that he not be permitted to exercise his own judgment as to whether he would or would not. The court overruled all of appellant's objections and contentions on the ground that the District Attorney could introduce it any time before the case was closed, but he never offered it in evidence.

It is obvious that in the manner in which the matter was handled it left the impression with the jury that appellant had made such a statement; otherwise the District Attorney would not have made the inquiry. This was an attempt on the part of the District Attorney to impeach appellant, who had testified that the pistol was accidentally discharged and upon which he relied as a defense. If the District Attorney had a second written confession which contained the statement contended for by him, he should have offered it. A

verbal statement, not embraced in the written confession, is not admissible in evidence because not made in compliance with Art. 727, C. C. P. Not having offered it, the only reasonable deduction to be drawn from such act is that the written confession did not embrace the statement. That appellant was under arrest at the time must be conceded. We think that this case falls within the holding of this court in the case of Lera v. State, 134 S. W. (2d) 248. In that case a somewhat similar situation arose as here presented and this court held that appellant could not be impeached by attempting to show on his cross-examination that he made a statement to the County Attorney at the police station at variance with his testimony of how the killing occurred. Here, we have, in effect, the same thing. We quote from the headnote in the case of Parker v. State, 57 S. W. 668: "Acts and statements of the accused, in the nature of confessions, while under arrest, are inadmissible for the purpose of impeaching him unless he has been warned before making them."

While, of course, the State had a right to impeach the appellant as to prior inconsistent statements, this was certainly an improper manner of doing so. The statute concerning confessions requires that if an accused is under arrest, his statements must be reduced to writing and so forth. Had the State sought to impeach him on this material matter by introducing his statement, taken in accordance with the statute, no complaint could have been urged by appellant. See Hill v. State, 161 S. W. 118, and authorities there cited.

Moreover, we think that if the claimed written statement contained all that the District Attorney contended it did, he should have offered such part thereof and given the appellant an opportunity to offer the remainder of it under the well-established rule that when the State offers a part of a written statement or confession the defendant may offer the balance of it. See Art. 728, C. C. P. We think this bill reflects reversible error.

The other matters complained of by appellant need not be discussed in view of the disposition we are making of the cause. However, we may state that in the event of another trial, we fail to see the materiality of the proof introduced by the State relative to what schools appellant attended.

For the error pointed out the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

GRAVES, Judge.

The State in its motion herein requests a clarification of the following portion of our original opinion in order that it might be governed thereby in the event of a new trial. The portion of such opinion complained of being as follows: "Now, what facts or circumstances have we in the instant case which show malice or a previously formed design on the part of the appellant to kill the deceased? None."

The State's attorney is apprehensive of the fact that such a holding would effectually bar him from the effort to introduce certain testimony relative to statements made by appellant showing a possible previously formed design to take the life of any peace officer attempting his arrest, whether legal or illegal, as well as other statements and actions upon appellant's part evidencing a heart regardless of social duty and fatally bent on mischief towards any and all officers with whom he might come in contact.

The complained of excerpt from the original opinion, of course, could only apply to the record as was therein presented to us, and would not preclude the State from an endeavor to show excessive force in effecting an enlargement from custody, for instance, nor would it preclude an endeavor to show a malicious intent. Nor did we mean to say that malice could not be shown in this case upon a new trial thereof, but merely meant to say that the present record did not, in our opinion, show such a condition of appellant's mind at the time of the killing.

We again refer to the quotation in the original opinion from Parks v. State, 99 S. W. (2d) 943, and reiterate that quoted portion thereof wherein it was said: "We did not intend to leave the impression that there must of necessity be evidence of premeditation or a previously formed design to kill. A killing might occur under circumstances where malice could be inferred."

We do think that under the instant facts presented to us herein no malice was shown.

With these remarks the motion is overruled.