**Denelle HARRINGTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52625.**

Court of Criminal Appeals of Texas.

March 9, 1977.

fraud." Paschal's Digest, Criminal Code, Art. 2184.

Percy Foreman and Richard M. DeGuerin, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and Andy Tobias, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of murder; Article 1256, V.A.P.C. (1925); the punishment is imprisonment for life.

Appellant and her husband were jointly indicted for the murder of their two year

old daughter, Laini Deanne Harrington. Her husband's motion for severance was granted and appellant was tried first.[1] The appellant contends that the evidence is insufficient to support the conviction.

At approximately 4:00 a. m. on July 27, 1973, Pasadena Police Officer Irwin was dispatched to an apartment to check a possible death. The officer was admitted to the Harringtons' apartment by the appellant. She told the officer that her little girl was dead and directed him to a bedroom. Irwin checked the child for vital signs and stated that the girl "had apparently been dead for a while." The deceased's bedroom smelled of animal excrement and rabbit manure was scattered about. There was human excrement underneath the baby's crib and smeared against the wall.

Assistant Medical Examiner Giles Green performed an autopsy on the body of the deceased. Dr. Green described the two year old child as follows:

"This child was very small, a little girl, white girl. She was very thin, emaciated, ribs showing, little muscle development a little muscle mass, at least in the arms or legs. She weighed, I think it was, twelve and three-quarters pounds, twenty-seven inches in height . . ."

Dr. Green's opinion was that the deceased had starved to death. She had been severely malnourished for a very substantial period of time. The child's death was the result of a very prolonged period of starvation.

Appellant gave the police a statement, after they had complied with the requirements of Article 38.22, V.A.C.C.P. In her statement, appellant said that she had taken the child to the doctor "for shots" during the first year after she was born, but had not taken the child to a doctor since then. She stated that the child had been sick and losing weight over the last two months, but "I didn't take her to the doctor for one reason because I would get in trouble because of the condition that she was in." She said that she was a "bad mother" and just did not like small children. On July 26th, the day her daughter died, appellant said she had given her daughter a bottle early in the morning then did not check on her until 10:30 p. m., at which time the child was dead. The police were not called until approximately 4:00 a. m. on July 27th.

Gayle Reise, a neighbor, testified that she first saw the deceased when she was about six months old. At that time the child appeared limp and could not sit up yet. Mrs. Reise said that the child's eyes were dull and that the little girl would not play or make any sounds. When Mrs. Reise visited the appellant she tried, but was never allowed to see the baby. She said appellant would not refuse to let her see the baby, but "would say it in such a way you wouldn't go in there." Appellant told Mrs. Reise that she had tried to feed the baby, but it had spit the food back at her, so she was not going to try to feed it. Appellant's comment to Mrs. Reise was that "she wasn't going to let it make a monkey— maybe not monkey—but something, out of her . . ."

Another neighbor, Roylene Babin, was a frequent visitor at appellant's apartment. Appellant made it known to Miss Babin that "she didn't care for children." Appellant would sometimes visit Miss Babin while her husband was at work. Although there was some dispute as to whether the child was at a nursery during these visits, Miss Babin stated that appellant would visit her for eight or nine hours and never go back to her apartment to feed the baby. Appellant had stated that it was nice to visit Miss Babin because she did not have children. Miss Babin would visit in appellant's apartment once or twice a week yet never saw the baby and never saw appellant feed the baby.

After appellant testified that she did not intentionally kill her baby, the State elicited testimony that appellant and her husband had a son who was older than the deceased. When her son was about a year old, the paternal grandparents took this first baby away from appellant because the baby was suffering from malnutrition and a frac-

---

1. See *Gary Harrington v. State*, Tex.Cr.App., —— S.W.2d —— (decided this day.)

tured skull. In her confession, appellant stated that after they gave their son to the grandparents "everything went O.K. for awhile." She got pregnant again, which she said was strictly an accident. She said she did not want another baby and was unhappy about it.

Medical Examiner Green stated that the autopsy did not reveal that the deceased had any other disease than the extreme degree of malnutrition that caused the child's death. Dr. Green testified that there is a disease called sprue, which is a defect in the lining membrane of the intestines that prevents food from being properly absorbed. The autopsy revealed that deceased was not suffering from this disease. Jerome Brown, a clinical psychologist, testified that there is a mental defect called anaclitic depression. This defect is a sudden depression that can occur in infants between the ages of six months to about two and one-half years old. This depression is caused by a sudden withdrawal of a mother figure to which the infant is extremely attached. One of the results of anaclitic depression can be that the infant would not eat properly. Dr. Brown was of the opinion that the deceased child was not suffering from mental defect or disease. This opinion was based on appellant's statements that the deceased child had been eating poorly and losing weight, then the baby changed and began eating again and gaining weight, and then the baby stopped eating again and subsequently died. Dr. Brown stated that anaclitic depression does not shift back and forth in this manner.

Appellant argues that the evidence is insufficient because the circumstantial evidence only amounts to a strong suspicion that she participated in the offense. She also argues that the evidence does not rule out the hypothesis that another person, her husband, was responsible for the child's death; nor does it rule out the hypothesis that the child would not eat due to a physical or mental defect.

Appellant's argument that it is reasonable to conclude that her husband could have killed the child since he had equal access to the child is totally misplaced in the circumstances of this case. The deceased child died of starvation. *Each* parent has a duty to support his or her minor children. Family Code, Sec. 4.02 (formerly Article 4614, V.A.C.S.); Article 602, V.A. P.C. (1925). See also, Family Code, Sec. 12.04, and *Ronk v. State*, 544 S.W.2d 123 (Tex.Cr.App.1976). Therefore, unless it is shown that one parent has sole and exclusive care, custody, and control of a minor child, *both* parents may be guilty of an intentional failure to provide sufficient food and care for a child. The omission or neglect to perform a duty resulting in death, such as of a mother failing to feed her child, may constitute murder where the omission was willful and there was a deliberate intent to cause death. *Martinez v. State*, 498 S.W.2d 938 (Tex.Cr.App.1973); 40 Am.Jur.2d, Homicide, Sec. 89 (1968); Annot. 61 A.L.R.3d 1207 (1975).

Appellant's contention that the case of *Suff v. State*, 531 S.W.2d 814 (Tex.Cr.App. 1976) is controlling under the facts of this case is without merit. In *Suff* the two month old baby died as a result of a sharp blow to the abdomen with a blunt object. This Court affirmed the conviction of the father for the child's murder but reversed the mother's conviction due to insufficient evidence. We said that there was not even "a scintilla of evidence" to show that the mother struck the death blow to her baby. In the case at bar, the child's death resulted from a continuous course of conduct, extending over a prolonged period of time.

The court charged the jury on the law of murder with malice, criminally negligent homicide, circumstantial evidence, concurrent causation, and the duty of a parent to support her minor children. In *Floyd v. State*, 494 S.W.2d 828 (Tex.Cr.App.1973), this Court stated:

"...when a jury, advised of the restrictions which the law places on circumstantial evidence, reaches the conclusion upon evidence properly before them that the accused is guilty, it is not for the reviewing court to supplant their findings by its own unless it is able to point to

weaknesses, omissions, or inconsistencies in the evidence which destroy its cogency."

We hold that: the evidence is sufficient to show that the deceased's death was caused by the appellant's failure to perform her duty to support the child; the evidence reasonably excludes the hypothesis that the child had a physical or emotional illness which caused her to reject food and nourishment; and the evidence is sufficient to show that appellant and her husband intentionally killed their child by starvation.

■ Appellant contends that the court erred in failing to delete from her confessions statements concerning an earlier extraneous offense. The portion of the statement complained of concerns her and her husband giving their first child, a boy, to her husband's parents because she had not been a good mother. Without deciding whether the statement in the confession even shows an extraneous offense, we find that appellant has not properly preserved this complaint for review.

The court held a hearing outside the presence of the jury to determine whether appellant's confession was voluntary and whether it was made in compliance with Article 38.22, V.A.C.C.P. After the court ruled that the confession was admissible, the appellant objected to the statements concerning the son, contending that it showed an extraneous offense. The court overruled her objection and the jury was returned to the courtroom. Shortly thereafter the State offered the confession in evidence before the jury at which time appellant's counsel stated, "No objection, Your Honor."

Appellant argues in her brief that the objection was properly preserved on the basis of Article 40.09, Sec. 6(d), V.A.C.C.P. However, the record clearly indicates that appellant's counsel withdrew the objection. The objection having been withdrawn, nothing is presented for review. *Simon v. State*, 406 S.W.2d 460 (Tex.Cr.App.1966); *Living v. State*, 473 S.W.2d 214 (Tex.Cr. App.1971); *McCloud v. State*, 494 S.W.2d 888 (Tex.Cr.App.1973).

Appellant also contends the court erred in overruling her motion in limine and allowing the State to prove an extraneous offense. Appellant is again complaining that the court allowed evidence concerning the fact the appellant's first child was given to the paternal grandparents because this child was suffering from malnutrition and a fractured skull.

Appellant filed a motion in limine urging that the State not be permitted to elicit testimony from three witnesses whom the State subpoenaed and who, it was alleged, would testify to the facts concerning the injury to appellant's first son. The court granted the motion in limine insofar as it ordered the State not to question these witnesses about this matter before the jury until the court had ruled on the admissibility of this testimony. However, before these witnesses were called to testify, the appellant took the stand in her own behalf. After the appellant testified that she did not intentionally harm the deceased, the State elicited testimony on cross-examination that appellant had a son born prior to the birth of the deceased. This son had lived with appellant and her husband for a year, at which time her husband's parents took the son away from her. There was testimony that the Child Welfare Department had questioned appellant concerning the fact that the son was suffering from malnutrition and a fractured skull. All of this testimony was admitted without objection.

■ Generally, a motion in limine will not preserve error; appellant must object on the proper grounds when the evidence is offered during trial. *Lopez v. State*, 535 S.W.2d 643 (Tex.Cr.App.1976); *Simpson v. State*, 507 S.W.2d 530 (Tex.Cr.App.1974); *Witherspoon v. State*, 486 S.W.2d 953 (Tex. Cr.App.1972); *Whatley v. State*, 488 S.W.2d 422 (Tex.Cr.App.1972). In addition, the only objection voiced when the State called the three witnesses named in the motion in limine was that one witness' testimony would be hearsay. An objection raised in the trial court must be the same as that raised on appeal. *Elizaldi v. State*, 519

S.W.2d 881 (Tex.Cr.App.1975). Also, if testimony is admitted without objection, appellant may not complain when testimony concerning the same subject is subsequently admitted. *Sherbert v. State*, 531 S.W.2d 636 (Tex.Cr.App.1976). Appellant's complaint that the State did not show that she committed the extraneous offense is not properly preserved for review because this contention was not raised in the trial court. *Evans v. State*, 499 S.W.2d 123 (Tex.Cr.App.1973). Moreover, in view of the appellant's defense, the evidence was admissible.

■ Appellant complains that the State was allowed to introduce her confession with certain portions deleted. She argues that the deletions altered the meaning and context of her statement. When appellant made this objection the court informed her that she had the right to introduce the deleted parts. The record reflects that appellant exercised this right to the fullest extent.

This Court has held that permitting the State to introduce only part of a confession without requiring that the confession be introduced in its entirety is not error because the accused has the right to introduce the remainder. Article 38.24, V.A.C.C.P.; *Bizzarri v. State*, 492 S.W.2d 944 (Tex.Cr.App.1973); *Pineda v. State*, 157 Tex.Cr.R. 609, 252 S.W.2d 177 (1952); *Holloway v. State*, 148 Tex.Cr.R. 33, 184 S.W.2d 479 (1944); *Ely v. State*, 139 Tex.Cr.R. 520, 141 S.W.2d 626 (1940).

The judgment is affirmed.

Opinion approved by the Court.