Eric Donell REECE, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–88–00305–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 4, 1989.

Mary B. Hennesey, Houston, for appellant.

Winston E. Cochran, Jr., Houston, for appellee.

Before MURPHY, ROBERTSON and SEARS, JJ.

## OPINION

MURPHY, Justice.

Eric Donell Reece appeals his felony conviction for aggravated robbery. TEX.PENAL CODE ANN. 29.03(a)(1) (Vernon 1989). The jury found him guilty as charged in the indictment and the trial court assessed punishment at sixty years' confinement in the Texas Department of Corrections. Appellant raises three points of error challenging evidentiary rulings by the trial court. We affirm.

The jury found that appellant robbed a Houston furniture store on April 18, 1987. The store had repossessed furniture from the appellant earlier the same day. The jury also found that appellant caused serious bodily injury to seventy-seven year old Ersel D. Smith, the proprietor of the store, who died during or shortly after the robbery. In a signed confession introduced at trial, appellant admitted he went to Smith's store on the day of the robbery to "try and take his money from him." Appellant also admitted he struck Smith three times, that Smith hit his head or was bleeding after appellant shoved him, and that appellant "figured [Smith] was dead" because he did not move when appellant touched his neck. The grand jury originally indicted appellant for murder and aggravated robbery, but the State abandoned the murder paragraphs of the indictment prior to trial.

■ In his first and second points of error, appellant maintains the trial court erred by allowing Keashia Butler, a/k/a Roxanne Nicole Butler, to testify for the State over his objection. Appellant argues that because he proved Butler was his "common law" wife, TEX.R.CRIM.EVID. 504 entitled her to refuse to testify and to refuse to disclose confidential information. We disagree.

TEX.R.CRIM.EVID. 504 controls claims of husband-wife or spousal privilege formerly governed by TEX.CODE CRIM.PROC.ANN. art. 38.11 (repealed Sept. 1, 1986). Rule 504(1) protects the right of a spouse to refuse to disclose a confidential communication: "a person ... has a privilege during their marriage and afterwards to refuse to disclose and to prevent another from disclosing a confidential communication made to his spouse *while they were married.*"

(emphasis added). With certain qualifications not applicable here, Rule 504(2)(a) further provides that "a *spouse* has a privilege not to be called as a witness for the State." (emphasis added). As under prior law, operation of these rules depends on a preliminary finding of a marital relationship. *See* Goode, Wellborn & Sharlot, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 504.2 at 255 (33 Texas Practice 1988) (hereinafter "GOODE, WELLBORN & SHARLOT").

Enactment of the Rules of Criminal Evidence will presumably not affect Texas case law interpreting former Article 38.11, which holds that the existence of a "common law" marriage is a question of fact. *See Aguilar v. State,* 715 S.W.2d 645, 647 (Tex.Crim.App.1986) (en banc), citing *Hightower v. State* 629 S.W.2d 920, 924 (Tex. Crim.App. [Panel Op.] 1981).[1] In determining whether the proponent of the spousal privilege has established the existence of a "common law" marital relationship, courts will undoubtedly continue to require that the proof meet the elements codified at TEX.FAM.CODE ANN. § 1.91(a)(2) (Vernon 1975), which governs proof of informal marriages.[2] *See Aguilar,* 715 S.W.2d at 647. Those elements are:

1) the parties' agreement to be married followed by;

2) living together in Texas as husband and wife and;

3) representing to others in Texas that they were married.

TEX.FAM.CODE ANN. § 1.91(a)(2); *see Aguilar,* 715 S.W.2d at 647; *Zephyr v. Zephyr,* 679 S.W.2d 553, 556 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *see also,* TEX.FAM.CODE ANN. § 1.91(b); *Reilly*

---

1. Provided the evidence raised the issue of the existence of a common law marriage, practice under former Article 38.11 also required the trial court, on request, to submit the issue of the existence of a common law marriage to the jury, with an instruction to disregard evidence obtained through a witness, if the jury found the witness was the "common law" spouse of the accused. *E.g., Aguilar,* 715 S.W.2d at 646, citing *Huffman v. State,* 450 S.W.2d 858 (Tex.Crim. App.1970). In *Aguilar,* the trial court ruled, pre-trial, there was no spousal relationship between the accused and a witness whose testimo-

ny he sought to exclude; the controlling issue on appeal was whether the trial court correctly refused appellant's request to submit the issue to the jury. 715 S.W.2d at 647.

2. Subchapter E of Title One of the Family Code also governs procedures for formalizing such marriages and refers to them as "Marriage Without Formalities." In the remainder of this opinion we will refer to these marriages as *informal* marriages.

*v. Jacobs,* 536 S.W.2d 406 Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.) (the first element may be inferred on proof of the remaining two elements). The court of criminal appeals has indicated it follows the rule applied in civil cases and has traditionally applied close scrutiny to claims of spousal privilege based on an informal marriage relationship. *E.g., Brooks v. State,* 686 S.W.2d 952, 954 (Tex.Crim.App.1985) (en banc) (strict scrutiny); *Krzesinski v. State,* 169 Tex.Crim. 178, 181, 333 S.W.2d 149, 151 (1960) (civil rule governs; strict scrutiny); *cf., Aguilar,* 715 S.W.2d at 647–48 (approving application of rule in civil cases).

The record does not reflect that appellant filed a formal motion claiming the privilege. The trial court nonetheless heard evidence on his "question ... relative to the possiblity of some spousal privilege" during the pretrial hearing. During the hearing, Butler stated she did not wish to testify against the appellant and both claimed she was the appellant's wife. The court also heard from eleven other witnesses, whose testimony on the issue differed, and ultimately ruled there was "no common law marriage" between Butler and the appellant. Appellant abandoned the spousal privilege issue after the trial court pronounced its ruling and did not seek jury resolution of his relationship with Butler.[3] Under the circumstances, appellant accepted the trial court's ruling on the admissibility of her testimony based on a claim of privilege, an issue squarely governed by TEX.R.CRIM.EVID. 104(a).

Rule 104(a) governs preliminary questions of admissibility. The rule states that the court determines questions of "the existence of a privilege," subject to the rules of evidence, here Rule 504. The abuse of discretion standard, which governed the trial court's determinations of admissibility prior to adoption of the Criminal Rules of Evidence, will presumably govern the trial court's rulings pursuant to Rule 104(a). *E.g., Smith v. State,* 683 S.W.2d 393, 405 (Tex.Crim.App.1984) (en banc) (abuse of discretion standard governs trial court's determination of the sufficiency of a predicate to reception of evidence); *Werner v. State,* 711 S.W.2d 639, 643 (Tex. Crim.App.1986) (en banc) ("clear abuse" of discretion standard governs trial court's determination of admissibility of evidence). The court of criminal appeals has already construed Rule 104(a) to require that "the judge alone" makes determinations of the admissibility of evidence. *Casillas v. State,* 733 S.W.2d 158, 168 (Tex.Crim.App. 1986) (en banc). Under this analysis, the only issue presented for our review is whether the trial court abused its discretion when it resolved the factual issue which was the predicate to appellant's claim of spousal privilege: the existence of an informal marriage relationship between him and Butler.

As appellant concedes, his and Butler's version of their relationship conflicted with the testimony of some of the eleven other witnesses who testified at the pre-trial hearing. But appellant's and Butler's own testimony differed on the first element required by Section 1.91(a)(2) of the Family Code, their "agreement to be married." In construing this element in *Aguilar,* the court of criminal appeals criticized *Welch v. State,* 151 Tex.Crim. 356, 207 S.W.2d 627 (1948) as having led to the misconception that an agreement to become married at some time in the future would suffice as proof of an "agreement to be married." *Aguilar,* 715 S.W.2d at 648. Citing Presiding Judge McCormick's opinion in *Lackey v. State,* 638 S.W.2d 439, 444 (Tex.Crim. App.1982) (en banc), the court held:

> *State,* 568 S.W.2d 344, 352 (Tex.Crim.App.1978) (en banc), *cert. denied,* 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784 (1979), citing 9 WIGMORE, EVIDENCE §§ 2549–50 (3d ed. 1940) ("better view" is that trial judge decide existence of "common law" marriage for purposes of claim of spousal privilege); *accord, Lackey v. State,* 638 S.W.2d 439, 444 (Tex.Crim.App.1982) (en banc) (citing same).

---

**3.** Accordingly, this court need not address the issue whether adoption of the TEX.R.CRIM.EVID. 104(a) and 504 will preclude the accused from submitting the issue of the existence of an informal marriage to the jury. *See supra,* n. 1; GOODE, WELLBORN & SHARLOT, § 504.2 at 257 (33 Texas Practice 1988); 1 J. WICKER, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 2 at 2, (Texas Practice 3d ed., 1986 Supp.). *See also, Bodde v.*

A present intention to be married in the future is not enough. The parties must intend to be husband and wife from the moment of the agreement onward.... [I]t is not sufficient to agree on present cohabitation and future marriage (citation omitted).

*Aguilar*, 715 S.W.2d at 648, citing *Lackey*, 638 S.W.2d at 443–44.

During the pre-trial hearing, Butler and the appellant both answered "Yes" when his counsel asked if they had agreed to be married, "to be husband and wife." Butler also answered "Yes" when defense counsel asked if she considered herself appellant's wife. But under cross-examination, appellant stated he was "engaged" to marry Butler, did not consider himself "officially married" and was intending to obtain a marriage license, but had not done so. Moreover, appellant referred to Butler as his "girlfriend" in his confession.

Although appellant's testimony suggests he may have misunderstood the legality of an informal marriage under Texas law,[4] the testimony and his reference to Butler as his girlfriend also reflect equivocation on whether he had actually agreed to be Butler's husband. *See Aguilar*, 715 S.W.2d at 648. Faced with this disputed evidence of the alleged spouses' agreement, the trial court properly relied on the sufficiency of proof of the remaining two elements, living together and his and Butler's representing to others that they were married. *See* TEX.FAM.CODE ANN. § 1.91(b) (proof of an agreement may be inferred from the remaining two elements). But here again, the record shows conflicting evidence.

With respect to their "living together," other witnesses disputed the exact dates of appellant's claim that he and Butler "shacked" together at his parents' house and her grandmother's house. And although both appellant and Butler claimed they told others they were married, the record shows they were far from consistent

in these representations. Appellant described Butler as his "girlfriend" to Houston Police Sergeant G.C. Schultz, who interrogated him on June 19, 1987 and used the same term in his written confession. And although some witnesses confirmed Butler's claim that she told them she was appellant's wife, others she claimed to have given that information denied ever receiving it or hearing it. Further, as Houston Police Sergeant F.E. Berner noted on the visitor permit he gave Butler when she visited appellant on June 19, 1987 at the Harris County jail, she responded "[N]o, I am his girlfriend." when Berner asked if she was the appellants' wife.

Because the record demonstrates disputed evidence on each of the elements required by Section 1.91 and because only the trial court had the benefit of assessing the credibility of appellant, Butler and the remaining eleven witnesses and the weight to accord their testimony, we cannot say that the trial court abused its discretion by ruling there was no "common law marriage." Having resolved that preliminary issue of fact against the appellant pursuant to Rule 104(a), and having therefore properly overruled his claim of spousal privilege pursuant to Rules 104(a) and 504, the trial court correctly allowed Butler to testify. We overrule the first and second points of error.

■■■ In his third point of error, appellant contends the trial court erred by allowing the State to introduce "only portions" of his confession. Appellant bases his complaint on the State's changing a sentence from his confession which originally read "I want to say that I do believe that I did not kill Mr. Smith cause [*sic*] I did not do nothing [*sic*] but hit him three times with my hand" by deleting words so that it ultimately read: "*I did kill Mr. Smith* (emphasis added)." The State's deletions represent a flagrant abuse of a long ac-

---

4. Since Butler was not 18 years of age, she would have required either parental consent, pursuant to TEX.FAM.CODE ANN. § 1.52 (Vernon 1975 & Supp.1989) or consent of the court, pursuant to § 1.53(a) of the Family Code, in order to enter into a *formal* marriage. The

Family Code would not constrain Butler's entering an *informal* marital relationship with the appellant under Section 1.91(a)(2), however, since Section 2.41(b) of the Family Code renders such a marriage merely voidable and not void.

cepted trial tactic. But while we condemn the abuse, we cannot conclude beyond a reasonable doubt that reversible error occurred in this case.

■ Well established practice under former TEX.CODE CRIM.PROC.ANN. art. 38.24 (Vernon 1979) (repealed, Sept. 1, 1986) and its predecessor, Article 728 of the 1925 Code of Criminal Procedure, permits the State to offer selected parts of the confession of the accused. *Harrington v. State,* 547 S.W.2d 616, 621 (Tex.Crim.App.1977); *Ely v. State,* 139 Tex.Crim. 520, 526, 141 S.W.2d 626, 629 (1940). Courts have concluded this practice is not error, even when the State's deletions alter the meaning and context of the original, as occurred here, because the accused had "the right to introduce the deleted parts" during his case-in-chief. *Harrington,* 547 S.W.2d at 621.[5]

TEX.R.CRIM.EVID. 107 is entitled the "Rule of Optional Completeness." It continues common law practice under Article 38.24 by making the remainder of a writing or "the whole on the same subject" admissible by a party when his opponent offers "part" into evidence. *See* GOODE, WELLBORN & SHARLOT, § 107.1 at 30. But Rule 107 is merely a rule of admissibility and does not affect *when* the party may introduce the remainder. *Id.;* J. WICKER, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 33 at 26 (Texas Practice 3d ed., 1986 Supp.) (hereinafter "WICKER"); Herasimchuk, *Texas Rules of Criminal Evidence: Summary of Changes,* 20 Hous.L.Rev. 67, 75 (1987 Supp.Tex.R.Evid.Handbook) [hereinafter "HERASIMCHUK"].

■ Under former Article 38.24, the accused could not demand that the State immediately offer the remainder of the confession. *Harrington,* 547 S.W.2d at 621.

TEX.R.CRIM.EVID. 106, which now governs introduction of the "Remainder of Related Writings or Recorded Statements," changes that practice. Appellant's confession is necessarily a "recorded statement" governed by Rule 106 because it was executed in compliance with TEX.CODE CRIM. PROC.ANN. art. 38.22 (Vernon 1979 & Supp. 1989). Under Rule 106, a party whose opponent introduces part of a writing or recorded statement may *at that time* introduce "any other part." Not only may the adverse party immediately offer the remainder, he may interrupt his opponent's case to do so, subject only to TEX.R.CRIM. EVID. 610(a). *See* TEX.R.CRIM.EVID. 106 comment; GOODE, WELLBORN & SHARLOT, § 106.1 at 28; HERASIMCHUK, at 74.[6] But the rule is truly *optional,* as its title denotes, and does not require the adverse party who seeks to introduce the remainder to present it during his opponent's case; he can rely instead on Rule 107. *See* WICKER, § 33 at 25, § 34 at 26, § 1221 at 115.

After the trial court admitted appellant's two-page confession, the prosecutor read it to the jury. Although the State had deleted portions of all but the first paragraph of the confession, appellant did not object to the prosecutor's omitting several sentences, phrases and words until the prosecutor read the following paragraph from page 2 of the original document:

I could see how the office was torn up ... I just dropped the card into the file which was near the office door. I then looked at Mr. Smith ... I then turned and walked out. I spent the night at [Butler's] grandmother's house and then this morning I don't know what time it was the officers came out ... (punctuation consistent with original).[7]

---

5. An alternative rationale for the practice is that the State seeks to avoid the consequences of a broader rule of practice: under certain circumstances, the State will be bound by exculpatory statements in a confession unless it disproves the statements beyond a reasonable doubt. *E.g., Rogers v. State,* 687 S.W.2d 337, 339 (Tex.Crim. App.1985) (en banc); *Palafox v. State,* 608 S.W.2d 177 (Tex.Crim.App.1979) (en banc); *but see Palafox,* 608 S.W.2d at 183–84 (Dally, J., dissenting) (criticizing practice).

6. Unlike its federal counterpart, TEX.R.CRIM.EVID. 106 does not require the original party offering the evidence to offer the remainder. *Compare* Rule 106 *with* FED.R.EVID. 106; *see* GOODE, WELLBORN & SHARLOT, § 106.1 at 28; HERASIMCHUK, at 74.

7. Appellant's point of error does not encompass the deletions in this paragraph.

Appellant's counsel then interrupted the prosecutor. Appellant objected, outside the hearing of the jury, to "the last paragraph" on the grounds that the prosecutor had "deleted certain words that totally changes the meaning of that sentence to make it completely opposite, although I know he doesn't have to offer the whole thing." Appellant's counsel answered the court affirmatively when asked if he would "introduce what's going to be deleted." The trial court then asked "That ought to fix it up, won't it?" When appellant's counsel responded "Well, I still object," the court overruled the objection. The prosecutor then reread the last edited sentence from the paragraph quoted above and, after informing the jurors that the second page of the confession was dated June 19, 1987 at 1:35 p.m., read the edited sentence on which appellant bases his point of error: "I did kill Mr. Smith," to which appellant did not object.

Before appellant testified on his own behalf, the trial court admitted the unedited confession into evidence. Appellant's attorney read all but the first paragraph to the jury. After a lunch recess, appellant took the witness stand on his own behalf and gave his version of the events leading up to Smith's injuries at the furniture store on April 18, 1987. After that testimony, his attorney asked appellant to "point out ... portions of the statement that are incorrect." Although appellant identified three other deletions and disputed the prosecutor's version of those parts of his confession, his testimony did not identify the discrepancy he complains of here.

■ The prosecutor's deletions which caused the sentence to read "I did kill Mr. Smith" clearly altered the meaning of the original sentence. By the deletions, appellant purported to admit the more serious offense of murder. But since the State had abandoned the murder paragraphs of the indictment prior to trial, the alteration was not dispositive of the aggravated robbery charge. The record suggests that appellant's strategy was to rely on Rule 107, which rendered the remainder of his original statement admissible, by affirma-

tively electing, at the time he originally objected, to defer reading the corrected version until just before appellant took the witness stand. WICKER, § 33 at 25. Because the trial court complied fully with Rule 107 by permitting appellant to offer the remainder of the confession, which the prosecutor made no attempt to oppose, we find no violation of Rule 107. *E.g.*, GOODE, WELLBORN & SHARLOT, § 107.1 at 30 (Rule 107 states rule of admissibility).

■ We further find no violation of Rule 106. In light of the prosecutor's deletions, the original sentence from appellant's confession "I want to say that I do believe I did not kill Mr. Smith" was clearly one "which ought in fairness to be considered contemporaneously" with the edited statement. TEX.R.CRIM.EVID. 106. But although appellant complains on appeal that he was "forced to introduce portions" of the confession while at the same time disputing its accuracy, appellant did not invoke the very rule which would have entitled him to timely correct the prosecutor by introducing only the remainder of the edited sentence "then and there" during the prosecutor's reading. TEX.R.CRIM. EVID. 106. Nothing required appellant to read all but one paragraph of his entire original statement in order to correct the error he claims here. By deferring his corrections to his case-in-chief, in reliance on Rule 107, appellant waived his right, under Rule 106, to timely remedy the prosecutor's abusive tactic. In our opinion, the general objection "Well, I still object" would not suffice to preserve error under Rule 106 in this case because, at the time appellant's counsel made the objection, the prosecutor had not yet read the statement of which appellant complains.

Even if appellant's general objection were somehow otherwise sufficient to preserve error, under the circumstances of the instant case we cannot say, beyond a reasonable doubt, that the trial court's error, if any, in permitting the prosecutor to read the edited statement "I did kill Mr. Smith" contributed to appellant's conviction or the punishment assessed. TEX.R.APP.P. 81(b)(2). We reach this conclusion in part

because the State had abandoned its original attempt to seek a murder conviction and pursued only the aggravated robbery paragraph of the indictment. In addition, during final argument appellant's counsel pointed out and invited the jurors to compare the two versions of the statement. Appellant also succeeded in placing his original version of the statement before the jury pursuant to Rule 107. And although appellant bases his complaint on one sentence, he could have corrected that sentence by offering to the jury only the sentence "I want to say that I do believe that I did not kill Mr. Smith." Appellant cannot now complain of having opted to correct other deletions as well. Accordingly, our review of the record convinces us that the State's case would not have been significantly less persuasive had the trial court excluded the altered version of appellant's confession which resulted from the prosecutor's reading the sentence at issue. *Smith v. State*, 744 S.W.2d 86, 94 (Tex. Crim.App.1987).

In sum, while we cannot condone and indeed condemn the alteration in meaning accomplished by the prosecutor's deletions in the instant case, we conclude the trial court's ruling was consistent with TEX.R. CRIM.EVID. 107, on which the record suggests appellant relied. We further conclude the appellant waived any error pursuant to TEX.R.CRIM.EVID. 106 by failing to timely urge his request to read the original version of the sentence on which he bases his point of error. Alternatively, we find no reversible error. We overrule the third point of error.

We affirm the judgment of the trial court.

SEARS, Justice, concurring.

I concur in the result only.

While I find no *reversible* error, I cannot agree that the State did not violate TEX.R. CRIM.EVID. 106 and TEX.R.CRIM.EVID. 107. Every rule of fundamental fairness and justice was violated and the court did nothing to correct it. The alteration of the confession was the most outrageous abuse of prosecutorial power I have ever seen. I

cannot be a party to finding such behavior acceptable.

The State abandoned the murder charge; therefore, the prosecutor used the alteration for the sole purpose of prejudicing and inflaming the jury. Criminal jurisprudence in Texas cannot be a game of "how much can the state get away with." I will not add my name to an opinion that does not find error in such deplorable, premeditated, prosecutorial misconduct.