Carl BORDMAN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–98–01374–CR–14–98–01376–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 7, 2001.

Rehearing Overruled Aug. 16, 2001.

Lane D. Thibodeaux, Bryan, for appellant.

Douglas Howell III, Bryan, for appellee.

Panel consists of Justices CANNON, LEE, and MAURICE E. AMIDEI.*

## OPINION

MAURICE E. AMIDEI, Justice (Assigned).

Carl Bordman appeals his jury convictions for aggravated sexual assault of his three children. The jury assessed his punishment at 75 years' imprisonment in each case. The trial court ordered the three sentences to run concurrently. In five points of error, appellant contends: (1) & (2) the trial court erred by denying appellant's motion to suppress his confession; (3) the trial court erred by refusing to grant his motion for an instructed verdict; (4) appellant received ineffective assistance of counsel; and (5) the trial court erred by not including the definitions of "reasonable doubt" in the jury charge. We affirm.

## FACTS

Appellant's oldest daughter, C.B., called the Aldersgate United Methodist Church and advised them about appellant's sexual assaults on her, B.B. and M.B. Three days later, appellant called the church and made an appointment to talk with church officials. When appellant arrived at the church, Pastor Wood told appellant that C.B. informed him that she, her sister, B.B., and her brother, M.B., had been sexually molested by appellant. Pastor Wood told appellant that the church officials called Child Protective Services (CPS), and reported the assaults. Pastor Wood also told appellant that they were going to notify the police. Appellant told Judith Christie, the director of the church, Senior Pastor Bruce Wood, and Dr. Stuart Quartemont, an elder in the church, that he did not remember doing any such thing.

At the suppression hearing, appellant testified that he went to the church to talk about problems between him and his wife. Appellant stated that Dr. Quartemont told him that if he confessed, that he would probably "just have only five years instead of fifteen years." He further stated that both Pastor Wood and Dr. Quartemont told him that if he confessed, it would "cleanse" him. He stated that all of them kept telling him the same things for about thirty to forty-five minutes, and appellant finally told them, "Yeah, I did it." Appellant stated that he said this to the church officials "to get them off [his] back." Thereafter, appellant told the church officials that he sexually assaulted his children. After the State rested, appellant again testified that the church officials accused him of child abuse, and he kept telling them he did not do it. The officials urged him to admit it, and told him that "God can start forgiving you." Appellant further stated that Dr. Quartemont told appellant he was "demon possessed." His taped confession had been played to the jury earlier, and appellant admitted he said "those things" but did it "just to shut them up." Appellant stated that he felt "someone" had sexually abused some of his children, but he did not know who. He stated that his brother, Royce, was in jail at that time and was also charged with sexual assault of appellant's children.

Deputy Gerald Kinard recorded appellant's oral confession on audio tape at the

---

* Senior Justices Bill Cannon and Norman Lee, and Former Justice Maurice Amidei sitting by assignment.

church in the presence of the three officials. Appellant confessed to having anal, oral, and vaginal sex with his two daughters B.B., age seven, and C.B., age eleven, and anal and oral sex with his son, M.B., age four.

Jane Riley, a pediatric nurse, examined the three children. C.B. told Ms. Riley that "her father put his front part in her front part," and showed Ms. Riley the penis on an anatomically correct doll. C.B.'s physical examination was normal. M.B. and B.B. had irritated anal areas and problems with stool leakage. Ms. Riley stated that this condition was consistent with B.B. and M.B. having had anal intercourse.

## THE CONFESSION

In points one and two, appellant asserts that the trial court erred by overruling his motion to suppress because: (1) his confession to the church officials was privileged, and (2) his confession resulted from deceptive promises of leniency and spiritual cleansing. Under point one, appellant argues that rule 505, Texas Rules of Evidence, applies to his oral confession to the church officials. Under rule 505, a person has a privilege to prevent the disclosure of a confidential communication by the person to a clergyman in his professional character as spiritual adviser. Under point two, appellant argues that Dr. Quartemont told him that if he confessed, he would "probably just have only five years instead of fifteen years" and his confession would "cleanse him." Appellant contends these deceptive promises induced him to involuntarily confess.

### Standard of Review

■ In reviewing a trial court's ruling on a motion to suppress, an appellate court should show almost total deference to a trial court's determination of the historical facts, especially when the trial court's fact findings are based on an evaluation of the credibility and demeanor of the witnesses. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The same amount of deference is shown to a trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.* We review *de novo* "mixed questions of law and fact" not falling within this category. *See id.* When faced with a mixed question of law and fact, the critical question under *Guzman* is whether the ruling "turns" on an evaluation of credibility and demeanor. *See Loserth v. State*, 963 S.W.2d 770, 773 (Tex.Crim.App.1998).

Here, the judge's finding that appellant's statement was not privileged does not "turn" on an evaluation of credibility and demeanor. We will review this point *de novo*. However, the trial court also found that appellant's statement to Deputy Kinard was voluntary. Implicit in this finding is a determination that appellant was not deceived by Dr. Quartemont's "promises." Because this finding that appellant was not deceived was based on an evaluation of credibility and demeanor, we apply an abuse of discretion standard. Because the ultimate resolution of the voluntariness question does not turn on the trial court's fact findings, we may review *de novo* the trial court's legal ruling on the voluntariness question. *See State v. Terrazas*, 4 S.W.3d 720, 726 (Tex.Crim.App. 1999).

### The Clergy–Communication Privilege

■ The State contends that the clergy-communication privilege cannot be used to exclude any evidence obtained in these child abuse cases under sections 261.101 and 261.202 of the Texas Family Code.

Appellant argues that these sections should not apply to criminal cases, and rule 505 would be superseded only in proceedings involving CPS investigations, conservatorship, and terminations of parental rights. Appellant cites no authority to support his argument, and we can find none.

Section 261.101 provides, in pertinent part:

(a) A person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter.

\* \* \* \* \* \*

(c) The requirement to report under this section applies *without exception* to an individual whose personal communications may otherwise be privileged, including ... a member of the clergy....

TEX. FAM.CODE ANN. § 261.101 (Vernon 1996 & Supp.2000).

Section 261.202 provides:

In a proceeding regarding the abuse or neglect of a child, evidence may not be excluded on the ground of privileged communication except in the case of communications between an attorney and client.

TEX. FAM.CODE ANN. § 261.202 (Vernon 1996 & Supp.2000).

■■■■ Sections 261.101 and 261.202 create an exception to rule 505. Statutory interpretation requires that we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. *See Ex parte Ruthart,* 980 S.W.2d 469, 471 (Tex.Crim.App.1998); *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). To that end, we must focus our attention on the statute's text and attempt to discern the fair, objective meaning of that text at the time of its enactment. *See*

*Ex parte Ruthart,* 980 S.W.2d at 471. "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute...." *Carranza v. State,* 980 S.W.2d 653, 659 (Tex.Crim.App.1998).

The exceptions to the privilege in the Family Code are clear and unambiguous. We hold that section 261.202 clearly makes an exception to rule 505 in this case. *See also* 1 STEVEN GOODE ET. AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 505.1(2d ed. 1993 & Supp.2000). In this article, Professor Goode states, in pertinent part:

First, the Family Code explicitly provides that a claim of privilege, other than the attorney-client privilege, may not be interposed in proceedings regarding the abuse or neglect of a child. An Attorney General Opinion resolves the seeming conflict between the Family Code and Rule 505 in favor of the Family Code [Op.Tex.Atty.Gen. No. JM–342 (1985) ]. Since the rules of evidence are subordinate to legislative enactments, the Attorney General's interpretation is doubtlessly correct.

*Id.*

We hold that the trial court did not err in denying appellant's claim of clergy-communication privilege because section 261.202, Texas Family Code, excepts the privilege in child abuse cases such as this. We overrule appellant's point of error one.

### The deceptive promises

Under point two, appellant argues that Dr. Quartemont told him that if he confessed, he would "probably just have only five years instead of fifteen years" and his confession would "cleanse him." Appellant contends these deceptive promises induced him to involuntarily confess.

■ The determination of whether a statement is voluntary must be based on an examination of the totality of the circumstances surrounding its acquisition. *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex.Crim.App.1985). The ultimate question is whether the State has overborne the defendant's will. *Id.* The United States Supreme Court has held that a promise is a factor to take into account in applying the general due process "totality of the circumstances" analysis. *See Arizona v. Fulminante*, 499 U.S. 279, 285–88, 111 S.Ct. 1246, 1251–53, 113 L.Ed.2d 302, 315–17 (1991). Texas law has long barred the use of a statement induced by a promise of someone in authority. *Warren v. State*, 29 Tex. 369, 372 (1867). A statement is involuntary and thus inadmissible if it is induced by a promise that is (1) of some benefit to the defendant, (2) positive, (3) made or sanctioned by someone in authority, and (4) of such character as would likely influence the defendant to speak untruthfully. *Sossamon v. State*, 816 S.W.2d 340, 345 (Tex.Crim.App.1991).

The court of criminal appeals has held that a "person in authority" is determined by "the actual relation between the parties, and perhaps the relation as it actually appeared to the accused, is the controlling factor." *Fisher v. State*, 379 S.W.2d 900, 902 (Tex.Crim.App.1964). The court also stated, "[T]he test is whether the accused was likely to view the promise as authoritative, and this test is to be determined by the standard of the person confessing. The injured party, the employer of the accused, and officers, have been held to be within the meaning of 'persons within authority.'"*Id.*

■ Dr. Quartemont was not the "injured party, the employer of the accused," or an officer. *See id.* There is nothing in the record to show Dr. Quartemont was acting for any authorized person to promise leniency. If appellant confessed, Dr. Quartemont had no authority to promise him any leniency or give advice as to the legal consequences of such a confession. *See Hough v. State*, 929 S.W.2d 484, 488 (Tex.App.—Texarkana 1996, pet. ref'd). Therefore, we hold appellant's confession was not involuntary because of a promise of leniency by a person in authority. Dr. Quartemont's statement was not a promise, but was attempted legal advice by a layman, which turned out to be incorrect.

Appellant also contends Dr. Quartemont and Pastor Wood both told him that if he confessed, it would cleanse him. At the suppression hearing, appellant stated that he went to the church for marital counseling. Upon his arrival, Pastor Wood and Dr. Quartemont immediately told appellant that C.B. had told them of his sexual assaults on all of his children. Appellant stated they kept telling him he should confess, and finally he admitted he "did it." He gave as his reason for confessing was to "get them off my back." Appellant did not testify that he confessed because of these promises.

■ The promise that appellant's confession would "cleanse him" cannot reasonably be characterized as conferring any sort of benefit appellant did not already enjoy, since appellant could simply have chosen not to speak to the church officials at all. Moreover, these alleged promises were not of the type likely to make the appellant believe that his condition would be bettered by making a confession, even a false confession. *See Janecka v. State*, 937 S.W.2d 456, 466 (Tex.Crim.App.1996), *cert. denied*, 522 U.S. 825, 118 S.Ct. 86, 139 L.Ed.2d 43(1997). We hold that the trial court did not abuse its discretion by finding appellant's confession was voluntary. We overrule appellant's point of error two.

## THE SUFFICIENCY OF THE EVIDENCE TO ESTABLISH VENUE AND CORPUS DELICTI

### Failure to Establish Venue

After the State rested, appellant moved for a directed verdict on the grounds that the State failed to prove the sexual assaults occurred in Brazos County, Texas. The record shows that Deputy Kinnard stated that he was called by a College Station Detective, Leslie Hicks, to investigate the sexual assaults. The State asked Deputy Kinnard why a College Station Detective would have called him, and he stated:

> They were initially called on the case and it was found to be-it was determined during her investigation that the alleged offenses occurred in rural Brazos County so I was called in.

Appellant did not object to Deputy Kinnard's statement. The trial court denied appellant's motion for a directed verdict.

■ Failure to prove venue in the county of prosecution is reversible error. See *Black v. State*, 645 S.W.2d 789, 791 (Tex.Crim.App.1983); *Couchman v. State*, 3 S.W.3d 155, 161 (Tex.App.—Fort Worth 1999, pet. ref'd). It is presumed that venue is proven in the trial court unless the record affirmatively shows otherwise or venue is made an issue at trial. See TEX. R.APP. P. 44.2(c)(1).

■ Venue in criminal cases need only be proven by a preponderance of the evidence, which may be either direct or circumstantial. TEX.CODE CRIM. PROC. ANN. Art. 13.17 (Vernon 1977 & Supp.2001); see *Black*, 645 S.W.2d at 790. The trier of fact may make reasonable inferences from the evidence to decide the issue of venue. See *Lozano v. State*, 958 S.W.2d 925, 929 (Tex. App.—El Paso 1997, no pet); *Benavides v. State*, 763 S.W.2d 587, 588–89 (Tex.App.—Corpus Christi 1988, pet. ref'd). The evidence is sufficient to establish venue if "from [that] evidence the jury may reasonably conclude that the offense was committed in the county alleged." *Rippee v. State*, 384 S.W.2d 717, 718 (Tex.Crim.App. 1964); *Knabe*, 836 S.W.2d at 839.

In this case, appellant did not object to Deputy Kinnard's testimony indicating that the assaults occurred in rural Brazos County. Neither the audiotape of appellant's confession nor the transcript of that tape was made a part of the record on appeal. Neither appellant nor the State indicate what happened to the confession. No challenge is being made to the contents of the confession, and only the procurement of the confession is being challenged. We have no way of knowing if appellant stated in his confession that the sexual assaults occurred in Brazos County. Neither appellant nor the State complain of the "missing" tape, and we cannot determine whether the tape was lost, misplaced, or overlooked. The playback of the audiotape to the jury was not transcribed by the court reporter. A copy of the transcript of the audiotape made prior to the trial was admitted "just for the appellate record," but it was not forwarded with the record we have. Appellant's designations of matters to be included in the clerk's record and in the reporter's record included "all exhibits admitted into evidence." Because neither appellant nor the State complain of the missing confession, we conclude that it is not necessary to the appeal's resolution. See *Issac v. State*, 989 S.W.2d 754, 757 (Tex.Crim.App.1999).

■ Deputy Kinnard's statement was admissible under rule 803(8)(B), Texas Rules of Evidence. Public records are excepted from the hearsay exclusion if they if they set forth matters observed under a legal duty about matters that there is a duty to report, excluding mat-

ters observed by police officers and other law enforcement personnel. The rule specifically provides that a public record or report may be in any form. TEX.R. EVID. 803(8). Additionally, Texas Rule of Evidence 805 provides that a hearsay statement included in another hearsay statement is not excluded if either statement is otherwise admissible. *See Clement v. Texas Dep't of Pub. Safety,* 726 S.W.2d 579, 581 (Tex.App.—Fort Worth 1986, no writ).

The information conveyed to Kinnard by Hicks concerning her observations and the reasons why she called the sheriff's department were made under a "duty imposed by law as to which matters there was a duty to report." *Id.* These were routine business matters concerning which police department had technical jurisdiction over the cases. Therefore, the exclusionary clause which prohibits "matters observed" by police officers would not apply. *See Pondexter v. State,* 942 S.W.2d 577, 585 (Tex.Crim.App.1996). The reasons for the possible impairment of judgment are not implicated in situations where officers are conducting routine business matters, such as the recording of "objective observations." *Id.* Since this is a situation where the police officer was performing his ordinary, routine, duties of determining which department had jurisdiction over the cases, his observations, and notation should be presumed reliable. *See Id.*

■ A jury, sitting as the trier of fact, could reasonably infer that the sexual assaults occurred in Brazos County based on the report to Kinnard by Hicks. The State therefore established by a preponderance of the evidence that appellant committed the offense in Brazos County. Accordingly, we hold that the trial court did not err in denying appellant's motion for directed verdict and we overrule this contention.

## Corpus Delecti

■ We have long embraced the common-law rule that an extrajudicial confession is insufficient to support a conviction absent corroboration. *Lott v. State,* 60 Tex.Crim. 162, 131 S.W. 553 (1910). In this state, "the rule has been construed to require independent evidence of the corpus delicti." *Gribble v. State,* 808 S.W.2d 65, 70 (Tex.Crim.App.1990). The term corpus delicti has been held to mean "proof of the fact that the crime charged has been committed by someone." *Bridges v. State,* 172 Tex.Crim. 655, 362 S.W.2d 336, 337 (1962). The identity of the perpetrator of the crime is not an element of the corpus delicti: the inquiry focuses only on the harm brought about by the criminal conduct of some person. *Gribble,* 808 S.W.2d at 70. The purpose of the corroboration requirement is to ensure that a person confessing to a crime is not convicted without independent evidence that the crime was indeed committed. Id. at 71.

■ We must examine the record to determine whether there is independent evidence of the corpus delicti of aggravated sexual assault of the complainants. In this case, Ms. Riley testified that she examined the three children. C.B. told Ms. Riley that "her father put his front part in her front part," and showed Ms. Riley the penis on an anatomically correct doll. C.B.'s physical examination was normal. M.B. and B.B. had irritated anal areas and problems with stool leakage. Ms. Riley stated that this condition was consistent with B.B. and M.B. having had anal intercourse. We find that this evidence alone was sufficient to establish the corpus delicti of these offenses and to corroborate appellant's confession. *See Damian v. State,* 881 S.W.2d 102, 106 (Tex.App.—Houston[1st Dist.] 1994, pet. ref'd).

The quantum of independent evidence required to establish the corpus delicti which corroborates an extrajudicial confession need not be great. *Id.* "So long as there is some evidence which renders the corpus delicti more probable than it would be without the evidence," the purposes of the corroboration rule have been met. *Gribble,* 808 S.W.2d at 72; *Wooldridge v. State,* 653 S.W.2d 811, 816 (Tex. Crim.App.1983).

Because evidence of the corpus delicti corroborated appellant's extrajudicial statement, we hold that his statement was sufficient to support his conviction. We overrule point of error three.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant contends his trial counsel was ineffective because he failed to object to the hearsay testimony of Deputy Kinard that Detective Hicks reported to him that her investigation revealed the offenses occurred in rural Brazos County.

When handed the task of determining the validity of a defendant's claim of ineffective assistance of counsel, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Thompson v. State,* 9 S.W.3d 808, 813–814 (Tex.Crim. App.1999). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

In this case, the record fails to rebut this strong presumption of reasonable counsel. A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. *Thompson,* 9 S.W.3d at 813–814.

Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. *Id.* In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Id.* To defeat the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* "Indeed in a case such as this, where the alleged derelictions primarily are errors of omission de hors the record rather than commission revealed in the trial record, collateral attack may be the vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record." *Id.*

Appellant did not file a motion for new trial and request a hearing to question his trial counsel, and the record is silent as to why appellant's trial counsel failed to object to the evidence. Therefore, appellant has failed to rebut the presumption this was a reasonable decision. "Failure to make the required showing of ... deficient performance ... defeats the ineffectiveness claim." *Strickland v. Washington,* 104 S.Ct. at 2071. The record provides no reference to explain why counsel chose not to object, or failed to object, when the evidence was presented. Appellant has not demonstrated that his trial counsel was ineffective. We overrule appellant's point of error four that his trial counsel was ineffective for failing to object to evidence.

## *GEESA* INSTRUCTION ON REASONABLE DOUBT

In his fifth point, appellant contends that the trial court erred by failing to

initially include, in its jury charge on guilt/innocence, the definitional instructions of reasonable doubt mandated by *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim.App.1991). He asserts that the failure to initially give that instruction in the jury charge is reversible error and not subject to harm analysis pursuant to *Reyes v. State*, 938 S.W.2d 718, 721 (Tex.Crim. App.1996).

■■■ *Geesa* and *Reyes* have been overruled. *See Paulson v. State*, 28 S.W.3d 570, 573 (Tex.Crim.App.2000). In *Paulson*, the court of criminal appeals held:

> It is ill-advised for us to require trial courts to provide the jury with a redundant, confusing, and logically-flawed definition when the Constitution does not require it, no Texas statute mandates it, and over a hundred years of pre-*Geesa* Texas precedent discourages it.

### Conclusion

We specifically overrule that portion of *Geesa* which requires trial courts to instruct juries on the definition of "beyond a reasonable doubt." We also overrule *Reyes*. We find that the better practice is to give no definition of reasonable doubt at all to the jury. On the other hand, if both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement.

*Paulson*, 28 S.W.3d at 573.

The holding is retroactive to this case because it was pending on appeal when *Paulson* was decided. *See Arroyo v. State*, 32 S.W.3d 868 (Tex.Crim.App.2000), reversing the court of appeals reversal of the case for failure to comply with *Geesa*. For this reason, we hold the trial court did not err in initially leaving out the *Geesa* instruction.

■■■ In any case, the trial court corrected any error it thought existed at that time by recharging the jury with the *Geesa* instruction after jury deliberations had commenced. *See Smith v. State*, 898 S.W.2d 838, 855 (Tex.Crim.App.1995). "In light of purpose of art. 36.16, Texas Rules of Criminal Procedure, the court may before verdict withdraw and correct its charge if convinced an erroneous charge has been given." *Smith*, 898 S.W.2d at 855 (citing *Chambers v. State*, 379 S.W.2d 907, 908 (Tex.Crim.App.1964)) "If the matter is before us, we find no error in the court's amending his charge in order to correctly state the law." *Smith*, 898 S.W.2d at 855. We hold the trial court committed no error in withdrawing and correcting the charge. We overrule appellant's point of error five.

We affirm the judgment of the trial court.