

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00781-CR

Douglas Anthony **WILKENS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR9131
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:　Rebeca C. Martinez, Justice

Sitting:　　Sandee Bryan Marion, Justice
　　　　　Rebeca C. Martinez, Justice
　　　　　Luz Elena D. Chapa, Justice

Delivered and Filed:　May 7, 2014

AFFIRMED

Douglas Anthony Wilkens appeals his conviction for bodily injury to a child, arguing that

the evidence was insufficient to support his conviction and that the trial court lacked jurisdiction

and venue.　We affirm the judgment of the trial court.

### BACKGROUND

On Monday, July 26, 2010, Ida Flores Williams picked up her grandson, J.J.F., from

daycare at about 5:20 p.m.　At the time, J.J.F. was three years old.　J.J.F. had spent the previous

weekend with his mother, Alyssa Rodriguez, who was under the supervision of Child Protective

Services due to allegations of physical neglect. Williams noticed bruises on J.J.F.'s face and immediately called CPS. The child's CPS caseworker, Carlos Beltran, arrived at the daycare and advised Williams to call the police. When Williams asked J.J.F. what had happened, he said, "I'm supposed to say that I fell down and hit myself on a rock." J.J.F. told Beltran that he had gone to the lake with his mother, and slipped on some rocks and hit his face. Beltran noticed that the left side of J.J.F.'s face was bruised, and that it did not look like it was caused by a rock.

Once the police arrived at the daycare, J.J.F. changed his story and said that "daddy" had hit him. J.J.F. referred to his mother's boyfriend as Doug or daddy. J.J.F. was taken to the hospital and examined by nurse Betty Mercer. J.J.F. told Mercer that his daddy hit him on the cheek and he pointed to the left side of his face. When Mercer asked him what his daddy's name was, he replied, "Doug. My mommy calls him that." J.J.F. explained that his daddy hit him on his face and spanked him on his "butt" because "I wants the tea to drink but I didn't behave. I didn't say please." Williams told Mercer that Rodriguez called her on Sunday and told her that they had gone to the lake and that J.J.F. had slipped on some algae and bruised his cheek. Mercer did not believe that the child's injuries were consistent with slipping on rocks, and it looked to her like he was slapped with a hand.

Another CPS caseworker, Steven Lewis, investigated the incident. Several weeks after Williams reported the injuries, Lewis interviewed Rodriguez. Rodriguez told Lewis that she made up a story about J.J.F. falling on the rocks and admitted that J.J.F. told her that Wilkens had slapped him. She told Lewis that she made up the story because she was afraid of losing visitation rights with her son. On cross-examination, Lewis conceded that Rodriguez never told him that she saw Wilkens hit J.J.F. Lewis admitted that he only interviewed the daycare director, who never saw any injuries on the child; he did not interview any other teachers or staff. Lewis reached the conclusion that the injuries did not occur at the daycare by virtue of J.J.F. telling him that Doug

hit him. Lewis saw the child three days after the injuries were reported and did not notice any visible injuries on the child at that time.

Prior to trial, J.J.F. submitted to a videotaped forensic interview with Lucy Gallegos at Child Safe. J.J.F. told her that "Daddy hit me," "he spanked me on the butt and hit me on the cheek." At trial, Gallegos testified that, in her opinion, J.J.F.'s statements that Wilkens hit him at his mother's apartment were not the result of coaching. She arrived at this opinion because J.J.F. was able to relay many details regarding the abuse, including that his mother was crying, and that his daddy was sorry and that he hit him because J.J.F. wanted tea and he did not say "please." J.J.F. also demonstrated to Gallegos how Wilkens hit him on the cheek. The video was admitted and played for the jury.

J.J.F., who was then 6 years old, also testified at trial. He stated that "Doug" hurt him by punching him in the face at his mother's apartment. On cross-examination, J.J.F. stated that Williams, his "Nana," had promised him a new video game if he was "good" during trial. J.J.F. also stated that Nana did not like Doug, and that he would not do anything to make his Nana or his mother mad.

The jury was shown photographs of J.J.F. taken at the hospital. The photos showed that the left side of his face, including the top of his eyelid and his lips, was bruised. Finally, Williams testified that she overheard Wilkens admit to hitting J.J.F., saying that he probably deserved it.

The jury found Wilkens guilty of bodily injury to a child as charged in the indictment and he was sentenced to five years' confinement. The trial court suspended the term of confinement and placed Wilkens on probation for five years. Wilkens timely appealed.

**DISCUSSION**

*Venue*

Wilkens first argues that the evidence at trial failed to establish that the offense occurred within Bexar County, and therefore the trial court lacked jurisdiction and venue. J.J.F. testified that Wilkens hurt him at his mother's apartment, but no evidence was put on as to the address of the apartment. Williams testified that she did not know where her daughter lived. She did, however, answer affirmatively when asked whether the apartment was in Bexar County. The CPS caseworker, Beltran, also answered affirmatively when asked whether Rodriguez's apartment was "here in Bexar County." After the jury returned a verdict of guilty, defense counsel filed a motion to set aside the verdict, arguing that the trial court lacked jurisdiction because the State failed to prove that the offense occurred in Bexar County. The State responded by stating that Williams testified that the apartment was located in Bexar County, and that Wilkens waived the issue by not raising it in his motion for directed verdict filed immediately after both sides closed. The trial court denied the motion to set aside the verdict.

The county in which the offense was committed is the proper venue for the prosecution. TEX. CODE CRIM. PROC. ANN. art. 13.18 (West 2005). "Venue is presumed to have been proven at trial unless venue is made an issue at trial or the record affirmatively shows otherwise." *Hernandez v. State*, 198 S.W.3d 257, 268 (Tex. App.—San Antonio 2006, pet. ref'd) (citing TEX. R. APP. P. 44.2(c)(1)). In a criminal case, venue need only be proven by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 13.17 (West 2005); *Hernandez*, 198 S.W.3d at 268. Proof of venue may be established through direct or circumstantial evidence. *Black v. State*, 645 S.W.2d 789, 790 (Tex. Crim. App. 1983). "The trier of fact may make reasonable inferences from the evidence to decide the issue of venue." *Bordman v. State*, 56 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

Initially, we disagree that Wilkens made the trial court aware of his objection in a timely manner. Wilkens did not raise any issue concerning venue until after the jury reached its verdict. *See* TEX. R. APP. P. 33.1(a)(1) (to preserve error, complaint must be made to trial court by timely request or motion). Nevertheless, we conclude that venue was proven by a preponderance of the evidence. Wilkens argues that both Williams and Beltran gave their answers in response to leading questions on direct and failed to provide any background to support their claims that the apartment in which the offense was committed was located in Bexar County. Wilkens, however, ignores the fact that Beltran also testified that, as Rodriguez's caseworker, he made unannounced visits to her home to ensure that she was following her service plan. Accordingly, Beltran would have had personal knowledge of the location of Rodriguez's apartment. Under the preponderance of the evidence standard, his assertion that the apartment was located in Bexar County constitutes some evidence that the offense occurred in Bexar County. *See Black*, 645 S.W.2d at 790; *Bordman*, 56 S.W.3d at 70. In any event, even if we were to agree that the State failed to prove venue, Wilkens has not shown that he was harmed. *See Schmutz v. State*, - - - S.W.3d - - - , No. PD-0530-13, 2014 WL 300810, at *7 (Tex. Crim. App. Jan. 29, 2014) (holding that venue error is non-constitutional and subject to a harmless error analysis under article 44.2(b) of the Texas Rules of Appellate Procedure). Accordingly, we overrule Wilkens's first issue.

### Sufficiency of the Evidence

Wilkens next argues that the evidence was insufficient to support his conviction for injury to a child. Specifically, he contends that it was just as likely that the child's mother assaulted him or that the injuries occurred at the child's daycare. Wilkens additionally argues that the child's grandmother was not credible because she disliked Wilkens and therefore had a motive to lie, and also promised J.J.F. a videogame in exchange for "being good" while testifying against Wilkens.

The standard for reviewing sufficiency of the evidence in a criminal appeal is the *Jackson v. Virginia* legal sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). "When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "[W]hen viewing the evidence in the light most favorable to the verdict, 'the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony.'" *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013) (quoting *Brooks*, 323 S.W.3d at 899). "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* at 771. This is because we must observe the cumulative impact of the evidence, instead of simply considering each piece of evidence in isolation. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Infante v. State*, 397 S.W.3d 731, 734 (Tex. App.—San Antonio 2013, no pet.). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Lopez v. State*, 415 S.W.3d 495, 496-97 (Tex. App.—San Antonio 2013, no pet.) (quoting *Merritt*, 368 S.W.3d at 525-26).

A person commits the offense of injury to a child "if he intentionally, knowingly, recklessly, or with criminal negligence, by act . . . causes to a child . . . bodily injury." TEX. PENAL CODE ANN. § 22.04(a)(3) (West Supp. 2013). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id*. at § 1.07(a)(8) (West Supp. 2013). Wilkens was charged by indictment with "intentionally and knowingly caus[ing] bodily injury to [J.J.F.], a child who was fourteen (14) years of age or younger, by striking [J.J.F.] with the hand of the defendant."

Here, the jury saw photos of J.J.F.'s injuries and heard J.J.F. testify that Wilkens punched him in the face. The jury also heard that after admitting that he had been told to repeat the story about slipping on the rocks, J.J.F. told Williams, Beltran, Mercer, and Gallegos that Doug, his "daddy," hit him. In addition, J.J.F. was able to provide consistent details about the incident to both Mercer and Gallegos, describing how Wilkens hit him after he failed to say "please" when asking for tea. Beltran and Mercer also testified that J.J.F.'s injuries were inconsistent with falling on rocks and Mercer stated that the injuries were consistent with inflicted trauma. There was also evidence presented that the child's mother created the story about J.J.F. falling on the rocks at the lake because she was afraid of losing visitation rights, and that the mother admitted that Wilkens hit J.J.F.

Although Wilkens suggests that the child's mother could have been the perpetrator of the offense or that the injuries could have occurred while the child was in daycare, the jury was free to reject these other scenarios. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence."). Likewise, the jury could have chosen to discount Wilkens's theory that Williams bribed J.J.F. to give false testimony in exchange for a video game. *See id.* Based on this record, and viewing *all* the evidence in the light most favorable to the verdict, we hold that the evidence is sufficient to support Wilkens's conviction for bodily injury to a child. We therefore overrule Wilkens's second issue and affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

Do not publish