

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-18-00400-CR

Jesus **MEDRANO** Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 18-0848-CR-B
Honorable Charles Ramsay, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: May 15, 2019

AFFIRMED

This case arises from the conviction of Appellant Jesus Medrano Jr., for continuous sexual abuse of a child, indecency with a child—sexual contact, and three counts of indecency with a child by exposure. After the trial court denied his motion to suppress, on May 17, 2018, Medrano was convicted by a jury on all five counts. The trial court assessed punishment at life without parole, twenty-years', and ten-years' confinement, respectively, in the Institutional Division of the Texas Department of Criminal Justice. In his sole issue on appeal, Medrano argues the trial court

erred by denying his motion to suppress because his confession was involuntary. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 15, 2018, prior to any witnesses being called before the jury, the trial court conducted a hearing on Medrano's motion to suppress.

Detective Franklin Thomas, an officer with the Seguin Police Department for over fourteen years, was the sole witness called to testify. The detective testified that he interviewed Medrano on January 11, 2016[1] at the Kerr County Jail. Detective Thomas testified that he was accompanied by Detective Lance Wright at the time of the interview. Medrano was in the jail following his arrest for charges that "were of a sexual nature. Indecency with a child at the time is what we believed."

Detective Thomas testified that Medrano was read his *Miranda* warnings; Medrano indicated that he understood all of his rights, signed the *Miranda* form, and agreed to be interviewed. The entire interview was recorded and at no time during the interview did Medrano ask for an attorney or invoke his *Miranda* rights. Prior to interviewing Medrano, Detective Thomas testified he never met nor investigated Medrano for any crimes. He was aware, however, that Medrano had a criminal history, "I don't believe it was very much major things. I think it was some minor things."

Although Medrano mentioned he was "dumb or stupid," Detective Thomas testified that Medrano's behavior during the two-hour and thirty-minute interview did not lead him to believe Medrano had a low I.Q. Medrano spoke about his religious nature. Detective Thomas explained,

> It seemed to me that he had some religious beliefs and that he believed in a God so sometimes as a detective we use that information to extract information.

---

[1] Detective Thomas's testimony during the motion to suppress indicates he interviewed Medrano at the Kerr County Jail on January 11, 2015; however, the evidence indicates the actual interview date was January 11, 2016.

Detective Thomas testified that he is a Christian, but that he does not have any special connections to God. He does not have any powers of salvation and he was not able to confer any type of religious benefit on Medrano. Additionally, Detective Thomas denied indicating to Medrano, at any point during the interview, that he had a special channel to God or that he could give Medrano salvation or absolution.

During cross-examination, Detective Thomas acknowledged telling Medrano, who had been raped as a child, that "he needed to break the chain," and that "[h]e needed to kill the demon." Detective Thomas explained that he was referencing breaking the chain of sexual abuse and that "telling the truth would be beneficial to him." The detective denied that anything he said was "psychologically coercive."

The trial court denied the motion to suppress and the trial proceeded. After several days of trial, the jury found Medrano guilty of one count of continuous sexual abuse of a child, one count of indecency with a child—sexual contact, and three counts of indecency with a child by exposure. The trial court assessed punishment at life without parole, twenty-years' confinement, and ten-years' confinement, respectively, in the Institutional Division of the Texas Department of Criminal Justice. This appeal ensued.

## MOTION TO SUPPRESS

### A.      Standard of Review

A bifurcated standard applies when we review a trial court's ruling on a motion to suppress based on an alleged *Miranda* violation. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *accord Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Turrubiate*, 399 S.W.3d at 150. An appellate court affords "almost total deference [to] the trial judge's rulings on questions of historical fact and on application of law to fact

questions that turn upon credibility and demeanor, and it reviews *de novo* the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor." *Alford*, 358 S.W.3d at 652–53 (citing *Ripkowski v. State*, 61 S.W.3d 378, 381–82 (Tex. Crim. App. 2001)); *accord Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2014); *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013).

**B.      Arguments of the Parties**

Medrano argues that after discovering his religious nature, the detectives made several attempts to force his confession by speaking about religion. Medrano argues Detectives Thomas and Wright told Medrano that the only way he could "break the chains and kill the demon" was to confess to his crimes and that in return for a confession, Medrano would receive salvation.

The State counters that there was no promise of a positive benefit to Medrano in return for his confession. While religion was a part of the conversation, at no point in time did either detective promise salvation in return for Medrano's confession. Additionally, the State argues the detectives' playing on Medrano's religious nature amounts to a lawful psychological tactic used by law enforcement to elicit the truth.

**C.      Voluntariness of a Confession**

"A confession may be involuntary under the Due Process Clause only when there is police overreaching." *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008). To reach a level of involuntary, the officer's overreaching must rise to a level where the defendant's will was "overborne and his capacity for self-determination critically impaired." *Contreras v. State*, 312 S.W.3d 566, 574 (Tex. Crim. App. 2010) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973)). The police misconduct must be causally related to the defendant's statements; absent such, there is no due process deprivation by a state actor, and no due process violation. *See Oursbourn*, 259 S.W.3d at 170 (citing *Colorado v. Connelly*, 479 U.S. 157, 164 (1986) (holding

- 4 -

if there is no police coercion or overreaching, there is no due-process violation)). Due-process claims of involuntariness are thus "an objective assessment of police behavior," not an assessment of the defendant's state of mind at the time of the statement. *See id*. at 171; *accord Gandy v State*, No. 04-16-00509-CR, 2019 WL 572842, at *4 (Tex. App.—San Antonio Feb. 13, 2019, no pet.) (mem. op., not designated for publication).

Determining whether a confession was voluntarily given must be analyzed by examining the totality of the circumstances. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007). A confession is "involuntary for the purposes of federal due process, only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *accord Meadoux v. State*, 307 S.W.3d 401, 412 (Tex. App.—San Antonio), *aff'd*, 325 S.W.3d 189 (Tex. Crim. App. 2010).

Medrano contends his confession was involuntary because of undue influence based on a promise. To "render a confession invalid . . . the promise must be positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully." *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004) (citing TEX. CODE CRIM. PROC. ANN. art. 38.21 (providing that an accused's statement is admissible against him "if it appears that the same was freely and voluntarily made without compulsion or persuasion")); *see also Fisher v. State*, 379 S.W.2d 900, 902 (Tex. Crim. App. 1964) (holding confession may only be used when "freely and voluntarily made without having been induced by the expectation of any promised benefit."). *Compare Masterson v. State*, 155 S.W.3d 167, 170 (Tex. Crim. App. 2005) (determining evidence simply indicated officer was willing to pass along information defendant wanted to convey and that did not amount to a promise), *and Alvarado*, 912 S.W.2d at 211

(concluding evidence supported implied finding that no positive promise was ever made by the detective); *overruled on other grounds*, *Warner v. State*, 245 S.W.3d 458 (Tex. Crim. App. 2008), *and Gibbs v. State*, 555 S.W.3d 718, 734 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (concluding officers' threats "did not constitute a 'credible threat' of violence against appellant" and twenty-four hour break in time period removed any imminent threat), *and Vasquez v. State*, 179 S.W.3d 646, 656 (Tex. App.—Austin), *aff'd*, 225 S.W.3d 541 (Tex. Crim. App. 2007) (concluding "promises of cigarettes and medications that will get [him] the help [he] needs did not coerce the confession"), *with Pitts v. State*, 614 S.W.2d 142, 143 (Tex. Crim. App. [Panel Op] 1981) (confirming unequivocally promising the defendant that he would not go to jail was an improper inducement), *and Oursbourn*, 259 S.W.3d at 181 (concluding reasonable jury could have found defendant's claims of bipolar and depressed or manic state made him unable to effectively waive his rights).

**D.      Promise of Some Benefit**

We analyze whether Medrano's confession was involuntary under *Martinez v. State*'s four-prong test.  127 S.W.3d at 794.  First, whether the promise was of some benefit to the accused.  *Id.*  Second, whether the promise was positive.  *Id.*  Third, whether the promise was made or sanctioned by someone in authority.  *Id.*  Fourth, the promise was of such an influential nature that it would cause the defendant to speak untruthfully.  *Id.*

Our discussion centers on the first prong, whether there was a promise of some benefit to Medrano during his interrogation.

The dispositive issue concerns whether the discussion of religion rises to the level of a beneficial promise.   Religion arguably influenced the conversation during Medrano's interrogation.  During the interrogation, an incident was mentioned that involved Medrano and his younger brother.  Detective Thomas told Medrano that the only way he could "break the chains

and kill the demon" was to confess to his crimes. During his testimony, the detective explained "breaking the chains" referred to the chains of sexual abuse. Detective Thomas further testified that he believed "telling the truth would be beneficial to [Medrano]." Neither detective was a member of any religious clergy nor did either detective suggest they had the power to give Medrano spiritual salvation.

Medrano was told that there may be a possibility that God would give him a chance to put his life back together. This court has held that references to God and seeking forgiveness for mistakes do not rise to the level of a promise. *See Rodriguez v. State*, No. 04-17-00599-CR, 2018 WL 4208830, at *2 (Tex. App.—San Antonio Sep. 5, 2018, no pet.) (mem. op., not designated for publication). However, neither officer promised to confer any religious benefit in exchange for his confession and any alleged statement that there *may be a possibility* that God would give Medrano a chance to put his life back together pertains to a future event. "A 'prediction about future events' is not the same as a 'promise.'" *Mason v. State*, 116 S.W.3d 248, 260 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (quoting *United States v. Fraction*, 795 F.2d 12, 15 (3rd Cir. 1986) (reasoning that a "prediction" is an action beyond a party's control, while a "promise" is an offer to perform or withhold action within a party's control)).

We have not located, and the parties have provided no authorities, of a Texas court with an affirmative finding of religious coercion. *See Arciba v. State*, No. 10-08-00120-CR, 2009 WL 5155532, at *6 (Tex. App.—Waco Dec. 30, 2009, pet. ref'd) (mem. op., not designated for publication); *but see Bordman v. State*, 56 S.W.3d 63, 69 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (concluding confession to clergy regarding sexual assaults because "they kept telling him he should confess" and "it would cleanse him" could not be characterized as conferring a benefit appellant did not already enjoy because he could have chosen not to speak to clergy). The mere discussion of religion or biblical principles is not enough absent a promise conferring a

benefit that would render an otherwise voluntary confession involuntary. *See Martinez* 127 S.W.3d at 794.

## CONCLUSION

Affording the proper deference to the trial court, as the sole trier of fact, and trial court's determination of the credibility of the witness, we conclude the detectives' statements did not promise any positive benefit in return for Medrano's confession. *See Johnson*, 414 S.W.3d at 192; *Turrubiate*, 399 S.W.3d at 150. Likewise, we cannot conclude Medrano's confession was due to "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado*, 912 S.W.2d at 211. Accordingly, we overrule Medrano's sole appellate issue regarding the trial court's denial of his motion to suppress and affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH