

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00375-CR

Gregorio **BARRERA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR9166
Honorable Jefferson Moore, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Rebeca C. Martinez, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: June 12, 2019

AFFIRMED

Gregorio Barrera was convicted by a jury of murder. On appeal, Barrera contends the

evidence is insufficient to prove: (1) he was the person who murdered the victim; and (2) the victim

was murdered in Bexar County. Barrera also contends the trial court erred in denying his motion

to suppress statements he made during a police interview. We affirm the trial court's judgment.

## BACKGROUND

Gregorio was charged with murdering his brother Andres Barrera. After Andres was

reported missing by relatives, his body was discovered buried under a foot or two of sand on a

beach at Padre Island National Seashore, which was located about thirty minutes from Corpus Christi, Texas. After hearing evidence presented over the course of five days, the jury found Gregorio guilty and assessed his punishment at fifty years' imprisonment. Gregorio appeals.

### SUFFICIENCY: IDENTITY AS MURDERER

In his first issue, Gregorio contends the evidence is legally insufficient to support the jury's finding that he was the person who murdered Andres.

A. Standard of Review

When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard requires appellate courts to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. "Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial." *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018).

"Legally sufficient evidence need not exclude every conceivable alternative to the defendant's guilt, and the law requires no particular type of evidence." *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018) (internal citation omitted). "Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Zuniga*, 551 S.W.3d at 733.

B.    Analysis

The evidence presented at trial established Gregorio and Andres were involved in an ongoing argument regarding their deceased mother's house in San Antonio, Texas. Although they initially jointly owned the house, Gregorio conveyed his interest in the house to Andres. After the conveyance, Gregorio remained living at the house while Andres lived in an apartment. Although he no longer had an ownership interest in the house, Gregorio argued with Andres regarding Andres's decision to remodel the house in preparation for selling it. Eventually, Andres moved Gregorio's belongings from the house to a storage unit and subsequently evicted Gregorio from the house.[1]

Mary Frances Rodriguez, one of Gregorio's and Andres's sisters, began calling police to report Andres missing on September 11, 2016, and an official missing person report was filed on September 12, 2016. Andres last reported to work on September 2, 2016, and was scheduled but did not report to work on September 3, 2016. Martha Barrera, another of Gregorio's and Andres's sisters, tried to contact Andres throughout Labor Day weekend (September 3-5, 2016), but she was unable to reach him even though they usually spoke on a daily basis. Surveillance video from a neighbor who lived two houses from Andres's house showed Andres's truck in the alley behind his house on September 5, 2016. Another neighbor who tried to enter the alley on September 5, 2016, to dispose of trash was unable to reach the trash bin because Andres's truck was blocking the alley. Phone records revealed a call was made from Gregorio's cell phone on September 5, 2016, from a location in Corpus Christi.

On September 12, 2016, Jose Garcia, Martha's son, traveled from Corpus Christi to San Antonio to look for Andres. He discovered Andres's apartment had been ransacked and items

---

[1] Although Andres's relatives testified Gregorio was evicted in June of 2016, the lead detective testified she contacted the constable's office and was provided a final eviction notice dated August 23, 2016.

were missing. When Mary, Martha, and Jose drove to Andres's house, they discovered Gregorio was at the house, and Andres's truck was parked in front of the house. They considered this unusual because Gregorio had been evicted, and Andres always parked in the driveway. As a result, they called police.

While Mary and Martha were speaking to the police outside the house, Gregorio twice called 911 and pretended he was Andres. Gregorio told the 911 operators that he, Andres, gave his brother, Gregorio, permission to stay at the house.

Later that evening, Andres's nephew drove back by Andres's house and noticed Andres's truck was not there. He drove by the house of Gregorio's friend where he saw Andres's truck parked. Gregorio was in the front yard. The police were called, and they assisted the family in taking possession of the truck. Andres's wallet was found inside the truck.

A search warrant was obtained to search Andres's house. When the officers arrived to search the house on September 13, 2016, Gregorio was at the house. The search revealed Andres's blood was present on several surfaces of the house, including on the living room ceiling fan. A crime scene investigator testified the blood on the ceiling fan was blood splatter resulting from some force causing blood to splatter. The medical examiner testified Andres's skull was fractured as a result of blunt trauma. Another crime scene investigator searched the trash cans behind the house and found building materials with apparent blood, a bleach bottle, and a carpet cleaning bottle. In addition, a shovel and shoes were recovered from the house that contained sand, and a geologist forensic examiner testified the sand on the shoes was beach sand. The house also contained items from Andres's apartment.

Finally, Gregorio's statements to the police contained numerous inconsistencies. Some of the inconsistencies related to when and where Gregorio last saw Andres.

The jury could have found the cumulative force of all the foregoing incriminating circumstances sufficient to support a finding that Gregorio murdered Andres. Therefore, we overrule Gregorio's first issue.

SUFFICIENCY: VENUE OF MURDER

In his second issue, Gregorio contends the evidence is insufficient to establish the murder occurred in Bexar County.

A.     Standard of Review

The State is required to prove venue by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 13.17; *Murphy v. State*, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003); *Hernandez v. State*, 198 S.W.3d 257, 268 (Tex. App.—San Antonio 2006, pet. ref'd). Venue may be established by direct or circumstantial evidence. *Cox v. State*, 497 S.W.3d 42, 56 (Tex. App.—Fort Worth 2016, pet. ref'd); *Hernandez*, 198 S.W.3d at 268. A jury is permitted to draw reasonable inferences from the evidence to decide the issue of venue. *Hernandez*, 198 S.W.3d at 268. Evidence is sufficient to establish venue if the jury could reasonably conclude from the evidence that the offense was committed in the county alleged. *Bordman v. State*, 56 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Additionally, "[i]f a person receives an injury in one county and dies in another by reason of such injury, the offender may be prosecuted in the county where the injury was received or where the death occurred, or in the county where the dead body is found." TEX. CODE CRIM. PROC. ANN. art. 13.07.

B.     Analysis

As previously noted, traces of Andres's blood were found throughout his house which was proven to be located in Bexar County. From that evidence, the jury could reasonably infer that Andres was murdered at the house or received an injury at the house that resulted in his death. *See*

*id.* Accordingly, the evidence is sufficient to prove venue in Bexar County, and Gregorio's second issue is overruled.

<h2 align="center">MOTION TO SUPPRESS</h2>

In his final issue, Gregorio contends the trial court erred in denying his motion to suppress statements he made during his second interview by the police. Gregorio asserts the interview was a custodial interrogation, but he was not given his *Miranda* warnings.

A.      Standard of Review

We review a ruling on a motion to suppress using a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018). "Although we give almost total deference to the trial court's determination of historical facts, we conduct a *de novo* review of the trial court's application of the law to those facts." *Love v. State*, 543 S.W.3d 835, 840 (Tex. Crim. App. 2016) (internal quotation omitted).

B.      Custodial Interrogation

"A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Hines v. State*, 383 S.W.3d 615, 621 (Tex. App.—San Antonio 2012, pet. ref'd) (internal quotation omitted). The Texas Court of Criminal Appeals has outlined four situations that may constitute custody: (1) when a suspect is physically deprived of his freedom of action in any significant way; (2) when a police officer tells a suspect he cannot leave; (3) when a police officer creates a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and a police officer does not tell a suspect he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). In the first, second, and third situations, the restrictions upon the suspect's freedom of movement must rise to the degree associated with an arrest as opposed to an investigative detention. *Id.*

Statements made by a suspect during a custodial interrogation are inadmissible unless certain warnings were given to the suspect before he made those statements. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A defendant has the burden to establish he was in custody before the State bears the burden to show compliance with *Miranda*. *Hines*, 383 S.W.3d 621.

C.      Analysis

Around 1:00 a.m. on September 13, 2016, Gregorio voluntarily went to the police station to speak with the police. He left after a four-hour interview.

Seven hours later, Gregorio was at Andres's house when officers arrived to execute the search warrant. Gregorio voluntarily returned to the station to provide another statement. Although the officers who transported Gregorio placed him in handcuffs, Detective Lawrence Saiz, who started the interview,[2] told Gregorio he was not under arrest. When Gregorio asked about being handcuffed, Detective Saiz told him it was probably for officer safety and repeated that he was not under arrest. *In re S.C.*, 523 S.W.3d 279, 283 (Tex. App.—San Antonio 2017, pet. denied) (noting handcuffing for purposes of officer safety does not necessarily give rise to a custodial interrogation). Detective Saiz also told Gregorio the doors were not locked, he could leave at any time, and they would provide him with transportation. *Estrada v. State*, 313 S.W.3d 274, 295 (Tex. Crim. App. 2010) (holding appellant not in custody when told several times he was free to leave). The second interview lasted five hours during which Gregorio was offered food, water and the opportunity to use the restroom. *Id*. (holding appellant not in custody even though interview lasted approximately five hours). At the end of the interview, officers drove Gregorio to the location he requested and were instructed to pick up food for him on the way. *Id*. (noting

---

[2] A second detective later joined the interview.

evidence that appellant walked out of the station after giving his statement supported trial court's finding that he was not in custody).

In view of the foregoing, we hold Gregorio did not meet his burden to establish he was in custody.

## CONCLUSION

The trial court's judgment is affirmed.

Beth Watkins, Justice

DO NOT PUBLISH