

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00655-CR

Benjamin **SIMS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR2121
Honorable Jefferson Moore, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: December 5, 2018

AFFIRMED

A jury convicted Benjamin Sims of two counts of sexual assault of a child. The trial court sentenced Sims to concurrent twenty-year prison terms and signed a judgment of conviction for each count. Sims appealed. In three points of error, Sims complains about (1) the sufficiency of the evidence and venue, (2) the trial court's evidentiary rulings, and (3) trial counsel's effectiveness. We affirm.

## BACKGROUND

On March 2, 2016, a grand jury in Bexar County, Texas, indicted Sims for three counts of sexual assault of a child. The allegations in each count of the indictment were identical, except count one alleged the offense occurred "on or about" April 1, 2015, count two alleged the offense occurred "on or about" May 1, 2015, and count three alleged the offense occurred "on or about" May 30, 2015. Each count alleged that the complainant, Nora,[1] was a child younger than the age of seventeen and not Sims's spouse, and that Sims intentionally and knowingly caused his sexual organ to penetrate Nora's sexual organ. Thus, all counts of the indictment alleged that Sims committed the offense of sexual assault by causing his sexual organ to penetrate Nora's sexual organ.

Sims pled not guilty to all counts.

The case was tried to a jury. In her trial testimony, Nora explained that she lived in a house in San Antonio, Texas, with her grandmother, who was her guardian. Sims, who sometimes lived in the same house, was her grandmother's brother. Nora described three incidents of sexual abuse by Sims, all of which occurred when she was sixteen years old. Of the three incidents, only two involved Sims penetrating Nora's sexual organ with his sexual organ.

The jury also heard testimony from other witnesses. A school district police officer, Robert O'Callaghan, testified he knew Nora because she was a student in the school district where he worked. O'Callaghan had told Nora that she could call him if she was ever in trouble. On August 18, 2015, at around 10:00 p.m., Nora called O'Callaghan and told him she had been sexually abused by Sims. O'Callaghan was the first person Nora told about the sexual abuse. Nora explained to O'Callaghan that she wanted to tell her grandmother about the sexual abuse, but she was afraid

---

[1]We use a fictitious name to protect the complainant's privacy. *See* TEX. R. APP. P. 9.10(a)(3); *cf.* TEX. R. APP. P. 9.8.

her grandmother would "flip out." In response, O'Callaghan went to Nora's house, where he encouraged Nora to tell her grandmother about the sexual abuse. When Nora was unable to do so, O'Callaghan informed the grandmother about the sexual abuse.

Nora's grandmother testified that after learning about the sexual abuse, she called Sims on her cell phone and told him about Nora's allegations. Sims did not deny the allegations. The grandmother told Sims he needed to apologize to Nora for what he had done to her. Sims responded by saying that he had intended to call Nora and tell her he was sorry for what he had done. The grandmother then handed her phone to Nora, and Sims told Nora he was sorry for what he had done to her. Nora recorded the conversation between her and Sims on her cell phone. Nora could not recall if she ended the recording before her conversation with Sims was over; however, her grandmother testified that Nora recorded the entire conversation between Nora and Sims.

The San Antonio Police Department detective who investigated the case, David Munoz, testified that he first interviewed Nora on August 27, 2015. During this interview, Nora played the audio recording she had made of her conversation with Sims. Munoz made an audio recording of Nora's audio recording of her conversation with Sims.

The audio recording made by Munoz was admitted into evidence.

After all the evidence was presented, the State waived count three of the indictment, presumably because Nora had testified that one of the incidents did not involve organ-to-organ penetration and occurred outside of Bexar County. The jury found Sims guilty on both count one and count two of the indictment. The parties reached an agreement as to punishment. In accordance with the parties' agreement, the trial court sentenced Sims to concurrent twenty-year prison terms. Sims appealed.

**SUFFICIENCY OF THE EVIDENCE AND VENUE**

In his first point of error, Sims combines arguments about two separate issues: the sufficiency of the evidence and venue. Sims argues count one must be reversed because the evidence supporting this count did not show organ-to-organ penetration. Sims further argues count two must be reversed because the evidence did not show that this offense occurred in Bexar County, Texas. Based on these arguments, Sims claims he is entitled to a judgment of acquittal on count one and a new trial on count two. We begin by addressing Sims's sufficiency arguments and then turn to his venue arguments.

***Sufficiency of the Evidence***

"The standard of review for determining the [] sufficiency of the evidence to support a conviction is whether, after viewing all the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) (emphasis in original). In applying this standard, we defer to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id*. We consider the cumulative force of all the evidence. *Id*. Our deference to the jury extends to the inferences drawn from the evidence provided the inferences are reasonable ones supported by the evidence. *Id*.

To determine if the State met its burden to prove Sims's guilt beyond a reasonable doubt, we compare the elements of the offense as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the

defendant was tried. *Id*. The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Id*.

"An 'element' is a fact that is legally required for a fact finder to convict a person of a substantive offense." *Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014). The "elements" of an offense include the forbidden conduct, the required culpability, any required result, and the negation of any exception to the offense. TEX. PENAL CODE ANN. § 1.07(a)(22). Venue is not an element of an offense and a "failure to prove venue does not implicate sufficiency of the evidence." *Schmutz*, 440 S.W.3d at 35. Therefore, the previously-mentioned sufficiency standard of review does not apply to Sims's venue argument. *See id*.

A person commits the offense of sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A). The "on or about" language in an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period. *Sanchez v. State*, 400 S.W.3d 595, 600 (Tex. Crim. App. 2013).

At trial, Nora testified that the first incident of sexual abuse occurred when Nora and Sims were staying in a trailer in Buna, Texas. According to Nora, Sims put his mouth on her vaginal area. The second incident occurred when Nora was helping Sims, who was a truck driver, clean out his eighteen-wheeler. Sims drove Nora to a truck stop about fifteen minutes away from her grandmother's house in San Antonio. Nora and Sims smoked marijuana. Nora then went to lie on a small bed in the back of the truck and Sims joined her. While they lay on the bed, Sims put his penis inside Nora's vagina. Nora recalled that she had told a police officer that this incident occurred at the Flying J Truck Stop, which was located in San Antonio, Bexar County, Texas. The third incident occurred at Nora's grandmother's house in San Antonio, Bexar County, Texas. After

Nora and Sims smoked marijuana in the garage, she went to lie on a couch in the living room and Sims joined her. Again, Sims put his penis inside Nora's vagina. Nora testified that all three incidents occurred between February 2015 and August 2015. Although Nora did not remember the month each of the incidents happened, she did remember that the third incident happened weeks after the second incident.

On cross-examination, Nora claimed the first incident occurred in Buna or Beaumont, Texas, neither of which are in Bexar County, Texas. Nora thought the first incident had occurred during the week of spring break, but she was not certain. Nora did not remember how much time had elapsed between the first incident and the second incident; it may have been weeks. Nora equivocated about whether the second incident occurred at the Flying J Truck Stop in Bexar County, stating "now that I'm starting to think about it more, I'm thinking it was at the Shell station." Nora did not testify about the city or county where the Shell station was located.

Sims further argues the evidence was insufficient to support the jury's verdict on count one because the first incident of sexual abuse described in Nora's testimony did not involve organ-to-organ penetration and occurred in Buna or Beaumont, Texas, which are not in Bexar County. We reject Sims's argument, which is based on the flawed premise that the incidents Nora described in her testimony correspond consecutively to the counts in the indictment.[2] The indictment alleged three acts of "organ-to-organ" penetration, one occurring "on or about" April 1, 2015 (count one), another occurring "on or about" May 1, 2015 (count two), and another occurring "on or about" May 30, 2015 (count three). However, count one did not necessarily correspond to the first incident described in Nora's testimony; count two did not necessarily correspond to the second incident

---

[2]Sims asserts the State waived the wrong count of the indictment, arguing "the only event for which the acts [Nora] described at trial matched the elements listed in the State's indictment (i.e., Count III) was quite inexplicably waived and abandoned prior to jury deliberations." However, it did not matter which count the State waived. The allegations in each count of the indictment were identical, except for the alleged dates of the offenses.

described in Nora's testimony; and count three did not necessarily correspond to the third incident described in Nora's testimony. As previously stated, the "on or about" language in an indictment allows the State to prove a date other than the one alleged in the indictment, provided that the date is anterior to the presentment of the indictment and within the statutory limitation period. *Sanchez*, 400 S.W.3d at 600. Here, the State satisfied these requirements. The indictment was filed on March 2, 2016. The State presented proof that the sexual assaults occurred in 2015, which was anterior to the presentment of the indictment. And, the offense of sexual assault of a child has no limitations period. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(B).

After viewing all the evidence in the light most favorable to the State, we conclude a rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt. It does not matter that the first incident did not involve organ-to-organ penetration. Nora testified about two other incidents that did involve organ-to-organ penetration. Additionally, the evidence established that at the time of these incidents Nora was a child younger than seventeen years old and was not Sims's spouse. Therefore, we conclude the evidence was sufficient to support the jury's verdict on both counts one and two of the indictment.

### *Venue*

Generally, venue is proper in the county where the offense occurred. *See* TEX. CODE CRIM. PROC. ANN. arts. 13.18, 13.15. The State is required to prove venue by a preponderance of the evidence. *Id*. art. 13.17. Venue may be established by direct or circumstantial evidence. *Cox v. State*, 497 S.W.3d 42, 56 (Tex. App.—Fort Worth 2016, pet. ref'd). A jury is permitted to draw reasonable inferences from the evidence to decide the issue of venue. *Bordman v. State*, 56 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Evidence is sufficient to establish venue if the jury could reasonably conclude from the evidence that the offense was committed in the county alleged. *Id*.

Again, Sim's venue argument is based on the flawed premise that the incidents Nora described in her testimony correspond consecutively to the counts in the indictment. Specifically, Sims argues, "The record for Count II is defective because no evidence shows that the Shell station in question lies within the jurisdiction of Bexar County."

Nora provided conflicting testimony about the location where one of the sexual assaults involving organ-to-organ penetration occurred. Nora initially testified this incident occurred at the Flying J Truck Stop, which was located in Bexar County. Nora later testified this incident occurred at a Shell station, without specifying the city or the county where the Shell station was located. This inconsistency in Nora's testimony was for the jury to resolve. The jury could have believed the part of Nora's testimony stating that this sexual assault occurred at the Flying J Truck Stop in Bexar County. Based on the evidence presented, the jury could have reasonably concluded that this offense occurred in Bexar County. Additionally, Nora testified that another sexual assault involving organ-to-organ penetration occurred at her grandmother's house, and other evidence showed that her grandmother's house was located in Bexar County. Therefore, the jury could have reasonably concluded that this offense occurred in Bexar County.

We conclude the State established, by a preponderance of the evidence, that both of the offenses occurred in Bexar County.

We overrule Sims's first point of error.

### EVIDENTIARY RULINGS

In his second point of error, Sims argues the trial court abused its discretion in admitting certain evidence at trial. Specifically, Sims complains about the admission of (1) O'Callaghan's testimony about Nora's "outcry statements," (2) Munoz's testimony about the audio recording of the phone conversation between Sims and Nora, and (3) the audio recording itself.

*Applicable Law*

As the reviewing appellate court, it is our duty to ensure that a complaint is preserved in the trial court before addressing its merits on appeal. *Wilson v. State*, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010). Preservation of error is a systemic requirement that we must consider, regardless of whether the parties raise the issue. *Darcy v. State*, 488 S.W.3d 325, 327-28 (Tex. Crim. App. 2016).

To complain the trial court erred in admitting evidence offered by the State, the appellant must have preserved the error by a proper objection and obtained a ruling on that objection. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); TEX. R. EVID. 103(a),(b); TEX. R. APP. P. 33.1(a).[3] [4] A proper objection must be both specific and timely. *Martinez*, 98 S.W.3d at

---

[3]Rule 103 provides in pertinent part:

> (a) **Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
>     (1) if the ruling admits evidence, a party, on the record:
>     (A) timely objects or moves to strike; and
>     (B) states the specific ground, unless it was apparent from the context; or
>     (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.
>
> (b) **Not Needing to Renew an Objection.** When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal.

TEX. R. EVID. 103(a),(b).

[4]Rule 33.1 of the Texas Rules of Appellate Procedure provides in pertinent part:

> (a) *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:
>     (1) the complaint was made to the trial court by a timely request, objection, or motion that:
>     (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and
>     (B) complied with the requirements of the Texas Rules of Evidence or the Texas Rules of Civil or Appellate Procedure; and
>     (2) the trial court:
>     (A) ruled on the request, objection, or motion, either expressly or implicitly; or
>     (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

TEX. R. APP. P. 33.1(a).

193. Generally, an appellant must continue to object each time inadmissible evidence is offered. *Id*. However, two exceptions to this general rule exist. Under the first exception, an appellant must obtain a running objection. *Martinez*, 98 S.W.3d at 193; TEX. R. EVID. 103(b). Under the second exception, an appellant must request a hearing outside the jury's presence. *Martinez*, 98 S.W.3d at 193; TEX. R. EVID. 103(b).

Once we determine that error has been preserved, we review the trial court's rulings about the admissibility of evidence for an abuse of discretion. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). We consider whether the trial court's rulings were so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). If we conclude the trial court did abuse its discretion, then we must determine if the appellant was harmed by the error. The erroneous admission of evidence is non-constitutional error that must be disregarded unless it affects substantial rights. *See Hines v. State*, 383 S.W.3d 615, 625 (Tex. App.—San Antonio 2012, pet. ref'd); TEX. R. APP. P. 44.2(b). Furthermore, the improper admission of evidence does not constitute reversible error if the same evidence was admitted elsewhere without objection. *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998).

### Outcry Statements

Sims first complains of O'Callaghan's testimony about Nora's outcry statements, that is, the statements Nora made to O'Callaghan first revealing the sexual abuse. We do not reach the merits of this complaint because it is not preserved for appellate review. Although Sims objected to the prosecutor's initial question about Nora's outcry statements, he failed to object to the prosecutor's subsequent questions about Nora's outcry statements. *See Martinez*, 98 S.W.3d at 193 (requiring a party to continue to object each time inadmissible evidence is offered). Furthermore, Sims did not ask for a running objection or object at a hearing outside the jury's presence. We,

therefore, overrule Sims's complaint about the admission of O'Callaghan's testimony about Nora's outcry statements.

### Munoz's Testimony about the Audio Recording

The detective who investigated this case, Munoz, testified about his interview with Nora. Munoz testified that during this interview, Nora identified Sims as the other person on the audio recording. When the prosecutor asked Munoz about Nora's identification of Sims on the audio recording, Sims objected on the basis of hearsay. The trial court overruled the hearsay objection, and Munoz testified that Nora had identified Sims as the other person on the audio recording.

Subsequently, during her testimony, Nora identified Sims on the audio recording:

| Prosecutor: | And ultimately, when you gave your phone to Detective Munoz, were you able to tell him that that was [Sims] on the phone? |
|---|---|
| Nora: | Yes, ma'am. |
| Prosecutor: | And you recognized that voice to be Benjamin Sims? |
| Nora: | Yes, ma'am. |

Thus, the part of Munoz's testimony now challenged on appeal was admitted, without objection, during Nora's testimony. When the same evidence is introduced from another source, without objection, a defendant is not in a position to complain on appeal. *Mitchell v. State*, 68 S.W.3d 640, 643 (Tex. Crim. App. 2002); *Leday*, 983 S.W.2d at 717. Therefore, we overrule Sims's complaint about Munoz's testimony.

### Recorded Conversation Between Nora and Sims

Sims next complains the audio recording made by Munoz should not have been admitted because it was not authenticated. However, Sims did not make this specific objection when the audio recording was admitted. Nor did Sims make an authentication objection at a hearing outside

the jury's presence. Therefore, Sims's authentication complaint was not preserved for appellate review.

However, Sims also complains the audio recording should not have been admitted because it was "incomplete." The record shows Sims objected to the admission of the audio recording based on its "incompleteness" twice: at a hearing outside the jury's presence and at the time the audio recording was offered and admitted. When the audio recording was offered, Sims's trial counsel objected:

> Your Honor, at this time the Defense would object. Having listened to this recording before, it is an incomplete recording of a conversation. It's a—it abruptly stops at some point during the conversation. What I would argue to the court is that the Rule of Optional Completeness would typically allow us to play the entire—the entire conversation, except they didn't record the entire conversation, *so there's no way for us to show what the rest of the conversation was, what the context was, anything along those lines. This is an incomplete recording.* Gives a false impression as to what was actually being said or what the conversation was about. So we would object on those grounds, Your Honor.

(Emphasis added). Therefore, Sims's "incompleteness" complaint was preserved for appellate review.

Turning to the merits, Sims argues "the trial court should not have admitted only that snippet of the conversation" "[d]ue to its incomplete nature." To support this argument, Sims relies on Rules 106 and 107 of the Texas Rules of Evidence. In response, the State argues that the trial court properly overruled Sims's objection because Rules 106 and 107 provide no basis for excluding the audio recording. According to the State, Rules 106 and 107 are not designed to exclude evidence; rather, they are designed to allow an adverse party an opportunity to present additional evidence.

Rule 106, titled "Remainder of or Related Writings or Recorded Statements," provides:

> If a party introduces all or part of a writing or recorded statement, an adverse party may introduce, at that time, any other part—or any other writing or recorded

statement—that in fairness ought to be considered at the same time. "Writing or recorded statement" includes depositions.

TEX. R. EVID. 106.

Rule 106 provides that when a party introduces part of a written or recorded statement, an adverse party may immediately introduce any part of the writing or recorded statement. *Reece v. State*, 772 S.W.2d 198, 203 (Tex. App.—Houston [14th Dist.] 1989, no writ). "Not only may the adverse party immediately offer the remainder, he may interrupt his opponent's case to do so…." *Id*. However, Rule 106 does not require an adverse party to introduce the remainder of the written or recorded statement during his opponent's case; instead, the adverse party can rely on Rule 107 and introduce the remainder at a later time. *Id*.

Rule 107, titled "Rule of Optional Completeness," provides:

If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent. "Writing or recorded statement" includes a deposition.

TEX. R. EVID. 107.

The Texas Court of Criminal Appeals has recognized that Rule 107 "is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party." *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007). "It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing." *Id*. The plain language of Rule 107 provides that if a part of some evidence is introduced, any other part may be introduced so long as it is on the same subject. TEX. R. EVID. 107. We have held that two threshold requirements must be met for this section of Rule 107 to apply. *Mendiola v. State*, 61 S.W.3d 541, 545 (Tex. App.—San Antonio 2001, no pet.). First, a party must have introduced a portion of the

evidence. *Id*. Second, the adverse party must show the remainder of the evidence being offered is on the same subject or necessary to fully understand or explain the topic. *Id*. Additionally, the plain language of Rule 107 provides that other evidence, including evidence that is not a part of what has already been introduced, may be admitted if it is necessary to explain or help the trier of fact fully understand the part that was introduced. TEX. R. EVID. 107.

We conclude the trial court did not abuse its discretion in overruling Sims's objection that the audio recording was inadmissible because it was "incomplete." The crux of Sims's complaint is that the audio recording should not have been admitted into evidence because it was not a recording of the entire conversation between Nora and Sims. We reject this complaint for two reasons. First, the record shows conflicting testimony was presented about the "incompleteness" of the audio recording. Munoz testified that the recording of the phone call was not complete. Nora testified that she did not remember if she stopped recording "while the conversation with Sims was still going." However, Nora's grandmother testified that the entire conversation was recorded. Second, Rules 106 and 107 of the Texas Rules of Evidence did not provide a mechanism to exclude the audio recording offered by the State; instead, these rules provided a mechanism for Sims to present other evidence to ensure the jury was not given a false impression. Sims's briefing does not explain how the admission of the audio recording gave the jury a false impression; nor does he assert that he was precluded from admitting additional evidence that would have corrected any such false impression. Therefore, we overrule Sims's complaint about the admission of the audio recording.

We overrule Sims's second point of error.

### INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his third point of error, Sims argues he was afforded ineffective assistance of counsel because trial counsel did not object to testimony that allegedly violated the confrontation clause.

We measure a claim of ineffective assistance of counsel against the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (applying *Strickland* test). A person claiming that counsel was ineffective must prove, by a preponderance of the evidence, that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012). To prevail on an ineffective assistance of counsel claim, both prongs of the *Strickland* test must be established. *See id*. A failure to establish either prong of the *Strickland* test will defeat an ineffective assistance of counsel claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id*.

"The Confrontation Clause of the Sixth Amendment guarantees the accused the right to confront the witnesses against him." *Paredes v. State*, 462 S.W.3d 510, 514 (Tex. Crim. App. 2015) (citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965)). "The United States Supreme Court has applied this rule to 'testimonial' statements and held that such statements are inadmissible at trial *unless the witness who made them either takes the stand* to be cross-examined or is unavailable and the defendant had a prior opportunity to cross-examine the witness." *Id*. (citing *Crawford v. Washington*, 541 U.S. 36, 54 (2004)) (emphasis added). Therefore, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9.

Here, O'Callaghan and Munoz testified at trial about the statements Nora had made to them about the sexual abuse. Sims now argues that his trial counsel's performance was deficient because

he did not object to this testimony on the basis that it violated the confrontation clause. However, because Nora took the stand and was available for cross-examination at trial, the challenged testimony did not violate the confrontation clause. *See Paredes*, 462 S.W.3d at 514. "[T]o implicate the Confrontation Clause, an out-of-court statement must (1) *have been made by a witness absent from trial* and (2) be testimonial in nature." *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) (emphasis added).

To establish his trial counsel's deficient performance, Sims must show that the trial court would have committed error in overruling a confrontation clause objection. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004). However, because Nora testified and was subject to cross-examination at trial, it would have been proper for the trial court to overrule a confrontation clause objection.[5] *See Crawford*, 541 U.S. at 59 n.9; *Paredes*, 462 S.W.3d at 514; *Woodall*, 336 S.W.3d at 642. We conclude Sims has not proven, by a preponderance of the evidence, that trial counsel's failure to object to O'Callaghan's and Munoz's testimony about Nora's statements fell below an objective standard of reasonableness. *See White*, 160 S.W.3d at 53. Sims's failure to establish the first prong of the *Strickland* test defeats his ineffective assistance of counsel claim. *See Thompson*, 9 S.W.3d at 813. We overrule Sims's third point of error.

## CONCLUSION

The trial court's judgments are affirmed.

Karen Angelini, Justice

Do not publish

---

[5]We express no opinion about whether the statements were testimonial in nature.